UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAIRA DE BERNARDI, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CITY AND COUNTY OF SAN FRANCISCO, <br><br> Defendant. | Case No. 18-cv-04597-HSG <br><br> **ORDER GRANTING PRELIMINARY APPROVAL** <br><br> Re: Dkt. No. 91 |
| ABDULLAH WAZWAZ, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CITY AND COUNTY OF SAN FRANCISCO, <br><br> Defendant. | Case No. 18-cv-05580-HSG <br><br> Re: Dkt. No. 121 |

Pending before the Court are the unopposed motions for preliminary approval of a FLSA collective action settlement filed by Plaintiffs in the matters of *De Bernardi, et al. v. City and County of San Francisco*, Case No. 4:18-cv-04597-HSG and *Wazwaz, et al. v. City and County of San Francisco*, Case No. 4:18-cv-05580-HSG. *De Bernardi*, Dkt. No. 91, *Wazwaz*, Dkt. No. 121; ("Mot.").[1] The parties have reached a settlement regarding Plaintiffs' claims and now seek preliminary court approval. On May 20, 2021, the Court held a hearing on the parties' motions for preliminary approval. *De Bernardi*, Dkt. No. 97, *Wazwaz*, Dkt. No. 125. For the reasons set forth below, the Court **GRANTS** Plaintiffs' motions for preliminary approval of the collective

---

[1] Because the motions for preliminary approval filed in each action are identical, the Court refers to both as "Mot."

settlement.

I. **BACKGROUND**

   A. **Factual and Procedural Background**

As current and former employees of Defendant City and County of San Francisco, Plaintiffs in both cases allege that Defendant violated the Fair Labor Standards Act ("FLSA"). Specifically, the FLSA requires an employer to compensate employees for cashed out or used compensatory time off ("CTO") at their "regular rate" of pay." 29 U.S.C. § 207(o)(3)-(4). On July 30, 2018, Plaintiffs Taira De Bernardi and Stephen Val Kirwan filed a complaint against Defendant for failure to pay the regular rate of pay for cash-out or use of CTO. *De Bernardi*, Dkt. No. 1. On September 12, 2018, Plaintiffs Abdullah Wazwaz, Jason Moore, Kenneth Yeung, and Brian Kam also filed a complaint against Defendant alleging similar CTO claims, in addition to allegations that Defendant excluded certain cash incentives from the calculation of the regular rate of pay used to pay overtime.[2] *Wazwaz*, Dkt. No. 1. Defendant filed answers to both complaints denying various allegations and raising various affirmative defenses. *De Bernardi*, Dkt No. 14; *Wazwaz*, Dkt. No. 24.

Defendant later indicated that it "completed the process of updating its pay practices for all City employees on December 1, 2018." *See De Bernardi*, Dkt. No. 91-6 Declaration of Gregg McLean Adam ("Adam Decl.") ¶ 14 (citing Defendant's Settlement Conference Statement); *De Bernardi*, Dkt. No. 91-7 Declaration of David E. Mastagni ("Mastagni Decl.") ¶ 14, Ex. C. And Defendant issued retroactive payments totaling approximately $1.4 million to affected employees "for the difference, if any, between the base rate of pay and the regular rate for CTO used or cashed out during the three-years preceding November 30, 2018." Mot. at 3, 12–13; *see* Adam Decl. ¶ 14.

---

[2] Specifically, the *Wazwaz* Plaintiffs alleged that Defendant was excluding cash incentives paid to certain employees possessing intermediate and advanced POST certificates ("POST Pay"). But Defendant "produced documents and information demonstrating that POST Pay was included in the calculation of the *Wazwaz* Plaintiffs' 'regular rate' during the relevant time period." Mastagni Decl. ¶ 16. And "[a]fter meeting and conferring, the parties confirmed POST Pay had been included." *Id.*

2

On December 11, 2018, the Court issued an order relating the *Wazwaz* action to the *De Bernardi* action. *De Bernardi*, Dkt No. 32; *Wazwaz*, Dkt. No. 36. In January, 2019, the Court granted the parties' stipulation to consolidate the actions for pre-trial purposes and referred the cases to a magistrate judge for settlement. *De Bernardi*, Dkt Nos. 42, 44; *Wazwaz*, Dkt. No. 52, 55. The Court also granted the parties' stipulations to both conditionally certify their respective actions as FLSA collective actions and provide notice to potential collective action members. *De Bernardi*, Dkt No. 40; *Wazwaz*, Dkt. No. 65. Following the notice period, a combined total of 1,833 current or former City employees opted in. Mot. at 3. However, a review of payroll records demonstrated that nearly two-thirds of these individuals "did not have recoverable damages under the FLSA because they did not (1) "earn CTO," (2) "have compensatory time cashed out or used during the recoverable period," or (3) "earn premiums that should have been included in the regular rate of pay for their compensatory time during the applicable recovery period." Mot. at 4.

In November, 2019, the parties participated in a settlement conference with Magistrate Judge Corley, during which the parties reached a settlement in principle. *De Bernardi*, Dkt No. 74; *Wazwaz*, Dkt. No. 101. The parties subsequently filed a notice of conditional settlement pending approval of the San Francisco Board of Supervisors. *De Bernardi*, Dkt No. 75; *Wazwaz*, Dkt. No. 102. In February 2021, the Board of Supervisors approved the proposed settlement, and the Mayor subsequently signed an ordinance approving the settlement. *De Bernardi*, Dkt No. 90; *Wazwaz*, Dkt. No. 120.

### B. Settlement Agreement

As previously noted, with the assistance of Judge Corley, the parties reached a global settlement. The key terms of the settlement agreement ("SA"), *De Bernardi*, Dkt No. 91-1; *Wazwaz*, Dkt. No. 121-1, are as follows:

Settlement Benefits:

Defendant will pay a settlement amount of $503,506.33, plus additional fees for settlement administrative expenses. SA at 3–5. The determined amount of $503,506.33 includes settlement payments in the amount of $192,006.33 to be allocated to "Recovery Plaintiffs" in both cases who have a valid FLSA claim, attorneys' fees and costs awards in the amount of $215,000, an incentive

award of $1,250 to each of the *De Bernardi* Named Plaintiffs, and administrator's fees and costs incurred up to the settlement conference in the amount of $94,000.[3] *See id.*

The individual amount paid to Plaintiffs with a valid FLSA claim is based on the backpay amounts already issued by Defendant. *Id.* at 4. The amount owed to each Recovery Plaintiff is identified in Exhibit 2-A to the settlement agreement. The settlement provides no recovery to "No Recovery Plaintiffs" who "consented to join either of the [a]ctions but who, based on a review of payroll records, are now owed any back wages because they did not use any compensatory time or have compensatory time cashed out during the applicable period, or they did not earn premiums that should have been included in the regular rate of pay for their compensatory time during the applicable recovery period." *Id.* at 3.

Release: The Named Plaintiffs and each Recovery Plaintiff who signs the settlement agreement will release:

> any and all liabilities, claims, demands, contracts, debts, damages, acts or omissions, obligations and causes of action of every nature, kind and description, in law, equity, or otherwise, whether or not now known or unknown, which heretofore do or may exist, in any way arising out of, connected with or related in any way to the payment of overtime (*Wazwaz*) and/or the cash out or use of compensatory time (*De Bernardi* and *Wazwaz*), as asserted in the Action in which such Named Plaintiff or Recovery Plaintiff is a plaintiff, as well as any attorneys' fees and costs incurred in connection with the negotiation, terms and execution of this Agreement, up to and including the date that, respectively, such Named Plaintiff or Recovery Plaintiff signs this Agreement (the "Signature Date") (hereafter, the "Released Claims"). The release in this Paragraph 3 includes, but is not limited to, release of any matter, cause or thing in any way arising out of, connected with or related to the Action in which the releasing Named Plaintiff or Recovery Plaintiff is a plaintiff, which includes any and all past, pending or contemplated lawsuits; claims; other administrative charges; and grievances brought by or on behalf of such Named Plaintiff or such Recovery Plaintiff against any Releasee in any way arising out of, connected with or relating to the payment of overtime (*Wazwaz*) and/or the cash out or use of compensatory time (*De Bernardi* and *Wazwaz*), as asserted in the Action to which

---

[3] "Recovery Plaintiffs" means "those current or former City employees who consented to join either of the Actions and who received Retro Payments, which fully compensated them for unpaid back wages. SA at 2–3. "No Recovery Plaintiffs" means "those current or former City employees who consented to join either of the Actions but who, based on a review of payroll records, are not owed any back wages because they did not use any compensatory time or have compensatory time cashed out during the applicable recovery period, or they did not earn premiums that should have been included in the regular rate of pay for their compensatory time during the applicable recovery period." *Id.* at 3.

> the releasing Named Plaintiff or Recovery Plaintiff is a plaintiff, through the Signature Date.

*Id.* at 6. This release includes a waiver of rights under Section 1542 of the California Civil Code. *Id.* at 7.

Conditions of Settlement: The payment of the settlement sums and the releases are contingent on the following events:

> a. Approval by the San Francisco Board of Supervisors;
>
> b. Preliminary Approval by the District Court of the settlement commemorated in the Agreement;
>
> c. Approval of the Agreement by all Recovery Plaintiffs identified in Exhibit A-2, by execution of this Agreement; and
>
> d. Final Approval by the District Court, including the dismissal without prejudice of all No Recovery Plaintiffs and those Recovery Plaintiffs who do not execute this Agreement.

*Id.* at 8–9.

If any Recovery Plaintiffs "do not execute this Agreement," then the City may choose to: "(i) remove the condition of having all Recovery Plaintiffs execute this Agreement and (ii) make the Agreement binding only as to all Recovery Plaintiffs who execute it. In this event, any Recovery Plaintiffs who do not sign this Agreement will be dismissed without prejudice from the Action in which they are Plaintiffs, in connection with the [C]ourt's order of Final Approval." *Id.* at 9.

If the City chooses to remove condition (c), then the administrator will "reimburse the City the sums specified un Exhibit A-2 as payable to the Recovery Plaintiffs who do not execute" the settlement agreement. *Id.*

Incentive Award: The settlement agreement contemplates a service award of $1,250 each for the two lead *De Bernardi* Named Plaintiffs, Taira De Bernardi and Stephen Val Kirwan. *Id.* at 5.

Attorneys' Fees and Costs: Counsel for *De Bernardi* will seek $150,000 and counsel for *Wazwaz* will seek $65,000. *Id.* at 4–5.

**II.  LEGAL STANDARD**

Because employees cannot waive their rights under the FLSA, FLSA collective action

settlements require court approval. *See Bisaccia v. Revel Sys. Inc.*, No. 17-CV-02533-HSG, 2019 WL 3220275, at *4 (N.D. Cal. July 17, 2019) ("*Bisaccia II*") (citation omitted); *Estorga v. Santa Clara Valley Transportation Auth.*, No. 16-CV-02668-BLF, 2020 WL 7319356, at *2 (N.D. Cal. Dec. 11, 2020) (citation omitted).[4] To determine whether a proposed FLSA settlement warrants approval, courts in this district apply the Eleventh Circuit's standard set out in *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982). *See Slezak v. City of Palo Alto*, No. 16-CV-03224-LHK, 2017 WL 2688224, at *1 n.1 (N.D. Cal. June 22, 2017) (collecting cases). Specifically, the court must consider whether the proposed settlement constitutes "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Food Stores*, 679 F.2d at 1354–55. "If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues . . . that are actually in dispute," the court may approve the settlement "to promote the policy of encouraging settlement of litigation." *Id.* at 1354.

### III. DISCUSSION

#### A. Bona Fide Dispute

The Court first considers whether there is a bona fide dispute. "A bona fide dispute exists when there are legitimate questions about the existence and extent of the defendant's FLSA liability." *Estorga*, 2020 WL 7319356, at *3 (citation omitted). Plaintiffs contend that the settlement agreement resolves questions concerning Defendant's liability because Defendant maintains that its failure to pay CTO at the regular rate was in good faith and not willful. Mot. at 6. Plaintiffs note that any recovery would be drastically reduced or eliminated if Defendant proved either of these contentions. *Id.* The Court agrees and finds that a bona fide dispute exists about the extent of damages with respect to liquidated damages and the applicable statute of limitations.

First, the settlement agreement provides for a "virtual award of full, non-discounted

---

[4] Approval of a FLSA collective action settlement is not formally required at the preliminary stage. *Bisaccia v. Revel Sys. Inc.*, No. 17-CV-02533-HSG, 2019 WL 861425, at *5 (N.D. Cal. Feb. 22, 2019) ("*Bisaccia I*"). But at the hearing, Plaintiffs' counsel explained that the parties seek preliminary approval to allow the significant number of No Recovery Plaintiffs an opportunity to raise any disagreement with the proposed settlement.

liquidated damages."[5] Mot. at 7. "The FLSA mandates liquidated damages in an amount equal to the unpaid overtime compensation unless an employer acted in 'good faith' and had 'reasonable grounds' to believe that it was not violating the FLSA." *Scalia v. Emp. Sols. Staffing Grp., LLC*, 951 F.3d 1097, 1102 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 1376, 209 L. Ed. 2d 121 (2021) (citing 29 U.S.C. §§ 216(b), 260). "These liquidated damages represent compensation, and not a penalty." *Loc. 246 Util. Workers Union of Am. v. S. California Edison Co.*, 83 F.3d 292, 297 (9th Cir. 1996) (citation omitted). Here, if Defendant showed that its payments were made in good faith, then Plaintiffs' claim of liquidated damages could be eliminated. And because the City already issued the backpay owed, there would be no further damages owed if a jury rejected an award of liquidated damages. *See* Mot. at 9. The settlement agreement resolves the dispute as to Defendant's good faith by effectively awarding full liquidated damages.

Second, the settlement agreement provides for a three-year statute of limitations. "Ordinarily, a two-year statute of limitations applies to claims under the FLSA." *Scalia*, 951 F.3d at 1102 (citing 29 U.S.C. § 255(a)). But a three-year statute of limitations applies to a "willful violation." *Id.* "A violation is willful when the employer either knew or showed reckless disregard for . . . whether its conduct was prohibited by the [FLSA.]" *Id.* (internal quotations and citation omitted). "The three-year term can apply where an employer disregarded the very 'possibility' that it was violating the statute." *Alvarez v. IBP, Inc.*, 339 F.3d 894, 908–09 (9th Cir. 2003), *aff'd*, 546 U.S. 21, 126 S. Ct. 514, 163 L. Ed. 2d 288 (2005). Plaintiffs contend that Defendant was on notice of its obligations under the FLSA because it had been previously sued "over similar regular rate issues" and Plaintiffs' counsel informed Defendant it was in violation of the FLSA prior to filing the *De Bernardi* complaint. Mot. at 8 (citing Mastagni Decl. ¶ 15 and Adam Decl. ¶¶ 9–11). But if Defendant showed its violation was not willful, then the standard statute of limitations would affect the settlement value. Plaintiffs estimate that excluding the third year of damages could reduce the settlement by as much as one-third. Mot. at 8; Mastagni Decl. ¶

---

[5] Plaintiffs note that though the settlement agreement indicated the payments are "treated as interest on the back wages" that Defendant already paid, they "represent the full equivalent of the opt-in Plaintiffs' liquidated damages for purposes of the parties' settlement negotiations." Mot. at 7 n.2.

7

22. The settlement agreement resolves the willfulness dispute by extending the standard two-year statute of limitations to three years.

Accordingly, the Court finds that a bona fide dispute exists under the FLSA. Further, the purpose of the bona fide dispute requirement has been satisfied because the settlement provides for full liquidated damages and a three-year statute of limitations. *See Slezak*, 2017 WL 2688224, at *2 (citing *Lynn Food Stores*, 679 F.2d at 1353 n.8) ("The purpose of this analysis is to ensure that an employee does not waive claims for wages, overtime compensation, or liquidated damages when no actual dispute exists between the parties.").

### B. Fair and Reasonable Resolution

The Court next considers whether the proposed settlement is fair and reasonable. In making this determination, courts consider the "totality of circumstances." *Estorga*, WL 7319356, at *3 (quoting *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1173 (S.D. Cal. 2016)). And in looking to the totality of circumstances, courts balance the following factors: (1) the plaintiff's range of possible recovery; (2) the stage of proceedings and amount of discovery completed; (3) the seriousness of the litigation risks faced by the parties; (4) the scope of any release provision in the settlement agreement; (5) the experience and views of counsel and the opinion of participating plaintiffs; and (6) the possibility of fraud or collusion. *See*, *e.g.*, *id.*; *Slezak*, 2017 WL 2688224, at *3.

#### i. Plaintiffs' possible range of recovery

"[C]ourts in the Ninth Circuit have found FLSA cases settling for approximately 25%–35% of the total possible recovery to be reasonable." *Estorga*, 2020 WL 7319356, at *4 (collecting cases). Plaintiffs note that the settlement agreement provides Plaintiffs who have a valid FLSA claim full liquidated damages for the maximum recovery period. Mot. at 9. Plaintiffs' counsel acknowledge that "the outcome of a trial, and the outcome of any appeals that may follow, are inherently uncertain in terms of both outcome and duration." *Id.* at 10 (citing Mastagni Decl. ¶ 24 and Adam Decl. ¶ 20). Given the high recovery provided without the risk and delay of further litigation, this factor weighs in favor of approval.

#### ii. The stage of proceedings and the amount of discovery conducted

8

Courts "assess[] the stage of proceedings and the amount of discovery completed to ensure the parties have an adequate appreciation of the merits of the case before reaching a settlement." *Slezak*, 2017 WL 2688224, at *4 (citation omitted). "If the parties have sufficient information to make an informed decision about settlement, this factor will weigh in favor of approval." *Id.* (internal quotation marks omitted) (quoting *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998)). As previously noted, the parties reached a global settlement while participating in a settlement conference and obtained approval of the settlement agreement from the Board of Supervisors. As to the amount of discovery conducted, Plaintiffs note that they propounded discovery "to understand both the specifics of how Defendant calculated back pay" and factual issues concerning Defendants' affirmative defenses that would affect both liquidated damages and the statute of limitations. *See* Adam Decl. ¶ 18; Mastagni Decl. ¶ 19. Given the circumstances of the case, the Court finds that the parties obtained and analyzed sufficient information relevant to the most pertinent issues to enable them to assess the likelihood of success on the merits. Accordingly, the Court finds this factor weighs in favor of approval.

### iii. The seriousness of the litigation risks faced by the parties

"Courts will approve an FLSA settlement when there is a significant risk that litigation could result in a lower recovery for the class or no recovery at all." *Estorga*, 2020 WL 7319356, at *5 (citation omitted). Plaintiffs acknowledge that the extent of Defendant's liability as to liquidated damages and the applicable statute of limitations is uncertain. *See* Adam Decl. ¶ 20. As previously noted, a finding regarding Defendant's alleged willfulness and lack of good faith could eliminate or significantly reduce Plaintiffs' recovery. Given the risk of a lesser recovery, or potentially no recovery at all, this factor weighs in favor of approval.

### iv. The scope of any release provision in the settlement agreement

"Courts in this Circuit have rejected blanket releases of all potential claims against the employer for all unlawful acts whatsoever." *Estorga*, 2020 WL 7319356, at *5 (collecting cases). Plaintiffs note that the release does not extend to claims beyond the specific FLSA claims at issue in *De Bernardi* and *Wazwaz*. Mot. at 11. Specifically, the release is limited to "any and all liabilities, claims, demands, contracts, debts, damages, acts or omissions, obligations and causes of

9

action of every nature . . . in any way arising out of, connected with or related in any way to the payment of overtime (*Wazwaz*) and/or the cash out or use of compensatory time (*De Bernardi* and *Wazwaz*), as asserted in the Action." SA at 6. And waiving rights under Section 1542 of the California Civil Code is "a common and accepted practice in this District." *Estorga*, 2020 WL 7319356, at *5 (N.D. Cal. Dec. 11, 2020) (citations omitted). Because the release is tailored to cover the specific FLSA claims at issue, this factor weighs in approval.

### v. The experience and views of counsel

Plaintiffs contend that the "opinions of counsel should be given considerable weight both because of counsel's familiarity with th[e] litigation and previous experience with cases." Opp. at 11 (citing *Larsen v. Trader Joe's Co.*, No. 11-CV-05188-WHO, 2014 WL 3404531, at *5 (N.D. Cal. July 11, 2014)). But "courts have taken divergent views as to the weight to accord counsel's opinions." *Van Kempen v. Matheson Tri-Gas, Inc.*, No. 15-CV-00660-HSG, 2017 WL 3670787, at *6 (N.D. Cal. Aug. 25, 2017) (citations omitted); *Bisaccia II*, No. 2019 WL 3220275, at *6 (same). Here, the Court accords only modest weight to counsel's views.

Plaintiffs' counsel assert that the terms are "fair and reasonable" and that the settlement amount provides "the maximum amount of damages any such Plaintiff could expect to achieve at trial." Mastagni Decl. ¶ 20; Adam Decl. ¶ 19. *Wazwaz* Plaintiffs' counsel and *De Bernardi* Plaintiffs' counsel each have over a decade of experience litigating FLSA claims and have obtained approval of several FLSA settlements. *See* Mastagni Decl. ¶ 6 ("I have approximately twenty years of experience litigating wage and hour and employment law matters."); Adam Decl. ¶ 4 ("I have approximately fifteen (15) years of experience litigating FLSA and similar claims."). Accordingly, although the factor's impact is modest, it weighs in favor of approval.

### vi. The possibility of fraud or collusion

In assessing the terms of FLSA settlements, courts may consider the signs of collusion described in *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). *See Estorga*, 2020 WL 7319356, at *6; *Jennings v. Open Door Mktg.*, LLC, No. 15-CV-04080-KAW, 2018 WL 4773057, at *8 (N.D. Cal. Oct. 3, 2018). Courts may find fraud or collusion (1) "when counsel receives a disproportionate distribution of the settlement, or when the class receives no

10

monetary distribution but class counsel are amply rewarded," (2) "when the parties negotiate a 'clear sailing' agreement providing for the payment of attorney's fees separate and apart from class funds . . .;" and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d at 947 (citations omitted).

Here, the parties reached a global settlement through "arms' length" negotiations and with the assistance of Magistrate Judge Corley, indicating a lack of fraud or collusion. *See* Adam Decl. ¶ 15; Mastagni Decl. ¶ 17; *see also Slezak*, 2017 WL 2688224, at *5 (citation omitted) (noting that the "likelihood of fraud or collusion [wa]s low . . . because the Settlement was reached through arm's-length negotiations, facilitated by an impartial mediator"). And the possibility of fraud or collusion is further reduced given that the parties participated in extensive discovery prior to reaching this settlement. *See* Mastagni Decl. ¶ 16; *see also Estorga*, 2020 WL 7319356, at *6 (citation omitted) ("The parties also engaged in lengthy litigation, including extensive discovery, before reaching the proposed resolution, which reduces the possibility of fraud or collusion in this settlement agreement."). And as previously noted, the individual settlement amounts are based on the backpay amounts already issued by Defendant. Mot. at 4. Although the proposed settlement indicates that the City will be reimbursed for any Recovery Plaintiffs that do not submit a signed settlement agreement, Plaintiffs' counsel indicated that the City is not released from its obligation if those Recovery Plaintiffs decide to pursue their claims individually.

In considering of the totality of the circumstances, the Court preliminarily finds that the proposed settlement is a fair and reasonable resolution of a bona fide dispute.

**C.    Attorneys' Fees and Costs**

Courts may award reasonable attorneys' fees and costs as part of a FLSA settlement. 29 U.S.C. § 216(b) (providing that, in a FLSA action, the court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorneys' fee to be paid by the defendant, and costs of the action"); *see Estorga*, 2020 WL 7319356, at *7. When deciding to award attorneys' fees and costs, the Court has discretion in a common fund case to choose either (1) the lodestar method or (2) the percentage-of-the-fund. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043,

11

1047 (9th Cir. 2002). Under the lodestar method, a "lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth*, 654 F.3d at 941(citing *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003)). "[T]he established standard when determining a reasonable hourly rate is the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (quotations omitted).

Here, Plaintiffs' counsel seek awards lower than the fees calculated using the lodestar method and below the value of the time actually spent. *De Bernardi* counsel seek an award of $150,000 for the 370 hours spent by Gregg Adam and Wendi Berkowitz. Adam Decl. ¶ 25. *Wazwaz* counsel seeks an award of fees and costs amounting to $65,000 for all firm time, amounting to approximately 319 hours. Mastagni Decl. ¶ 34. Having reviewed Plaintiffs' counsels' filings, the Court finds these requests are within the realm of reasonableness and counsel in favor of preliminary approval. The Court will more fully evaluate the reasonableness of any request for attorneys' fees, costs, and incentive awards at the final fairness hearing.

\* \* \*

Having weighed the relevant factors, the Court preliminarily finds that the settlement agreement presents a fair and reasonable resolution of a bona fide dispute and that the proposed attorneys' fees and costs are within a reasonable range.[6] Accordingly, the Court **GRANTS** preliminary approval. The Court **DIRECTS** the parties to include both a joint proposed order and a joint proposed judgment when submitting their motion for final approval.

**D.    Proposed Notices**

Plaintiffs prepared four separate notices to all Plaintiffs who consented to join the actions, including for (1) *De Bernardi* Recovery Plaintiffs, (2) *Wazwaz* Recovery Plaintiffs, (3) *De*

---

[6] The settlement agreement provides for two incentive awards for each Named *De Bernardi* Plaintiff in the amount of $1,250, but as previously noted, the Court will later consider the evidence presented at the final fairness hearing and evaluate the reasonableness of any incentive award request.

12

*Bernardi* No-Recovery Plaintiffs, and (4) *Wazwaz* No-Recovery Plaintiffs. At the preliminary approval hearing, the Court directed the parties to revise the initial notice forms to clearly provide all Plaintiffs with an opportunity to object to the proposed settlement in writing prior to the final fairness hearing. *See* Dkt. No. 125. Plaintiffs request that the Court approve the revised notice forms attached to the parties' subsequent stipulation as Exhibits A, B, C, and C. *See De Bernardi*, Dkt. No. 98, *Wazwaz*, Dkt. No. 126. All notices inform Plaintiffs of the nature of the action and the terms of the settlement, including the administrator costs incurred and the attorneys' fees and costs to be requested by class counsel.

Each notice informs all Plaintiffs that they have at least two options, including "do nothing," in which case the "claim will be dismissed without prejudice." The second option allows Plaintiffs to file an objection in writing prior to the final approval hearing and indicates that they may also appear at the final approval hearing. The notices inform the No-Recovery Plaintiffs that further investigation revealed that they were not in fact underpaid CTO and thus not entitled to a share of the settlement fund. The notices inform Recovery Plaintiffs that they "must sign and return the Release to the third party administrator no later than sixty [] days from the date of the mailing of th[e] notice," that the settlement amounts will be released by the City to the third-party administrator within forty-five days after the final approval of the settlement, and that the third party administrator will send a check for each Plaintiff's share of the settlement fund within thirty-days after the funds are released by the City. The Recovery Plaintiffs are further notified that they will not receive their share and their claim will be dismissed without prejudice if the third-party administrator does not timely receive their signed Release.

The Court approves the proposed notices, including the process for responding to the proposed notices and the process for objections.

**IV. CONCLUSION**

The parties are **DIRECTED** to meet and confer and stipulate to a schedule of dates for each event listed below, which shall be submitted to the Court within seven days of the date of this Order:

//

13

| **Event** | **Date** |
|---|---|
| Deadline for Settlement Administrator to mail notice to all Collective Action Members | |
| Deadline for receipt of signed releases or written objection(s) to the settlement | |
| Deadline for Administrator to deliver final accounting of releases and objections to parties | |
| Deadline for City to file notice of intention | |
| Filing deadline for final approval motion | |
| Final approval hearing | |

**IT IS SO ORDERED.**

Dated: 6/1/2021

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge