GREGG McLEAN ADAM, (SBN 203436)
gregg@majlabor.com
WENDI J. BERKOWITZ, (SBN 145624)
wendi@majlabor.com
**MESSING ADAM & JASMINE LLP**
235 Montgomery St., Suite 828
San Francisco, California 94104
Telephone:    (415) 266-1800
Facsimile:    (415) 266-1128

Attorneys for Plaintiffs
TAIRA DE BERNARDI, *et al*

DAVID E. MASTAGNI, (SBN 204244)
davidm@mastagni.com
TAYLOR DAVIES-MAHAFFEY, (SBN 327673)
tdavies-mahaffey@mastagni.com
**MASTAGNI HOLSTEDT, APC**
1912 I Street
Sacramento, California 95811
Telephone:    (916) 446-4692
Facsimile:    (916) 447-4614

Attorneys for Plaintiffs
ABDULLAH WAZWAZ, *et al*

DAVID CHIU (SBN 189542)
david.chiu@sfcityatty.org
JONATHAN C. ROLNICK (SBN 151814)
jonathan.rolnick@sfcityatty.org
OFFICE OF THE CITY ATTORNEY
Fox Plaza
1390 Market Street, Floor Five
San Francisco, California 94102-5408
Telephone;    (415) 554-3815
Facsimile:    (415) 554-4248

Attorneys for Defendant
CITY AND COUNTY OF SAN FRANCISCO

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA—OAKLAND DIVISION

| | |
|---|---|
| TAIRA DE BERNARDI, STEPHEN VAL KIRWAN, *et al*., <br><br> Plaintiffs, <br><br> v. <br><br> CITY AND COUNTY OF SAN FRANCISCO, <br><br> Defendant. <br><br> ABDULLAH WAZWAZ, *et al*., <br><br> Plaintiffs, <br><br> v. <br><br> CITY AND COUNTY OF SAN FRANCISCO, <br><br> Defendant. | Case No.  4:18-cv-04597-HSG <br><br> [*Consolidated for Pre-Trial Purposes with Case No.: 4:18-cv-05580-HSG*] <br><br> **NOTICE OF MOTION AND JOINT MOTION FOR FINAL APPROVAL OF COLLECTIVE ACTION SETTLEMENT** <br><br> Date:    January 20, 2022 <br> Time:    2:00 p.m. <br> Place:    Ctrm 2, 4th Floor <br><br> Hon. Haywood S. Gilliam, Jr. |

1    TO ALL PARTIES AND COUNSEL OF RECORD:

2    PLEASE TAKE NOTICE that on January 20, 2022, at 2:00 p.m. or as soon thereafter as

3    the matter can be heard, in Courtroom 2 of the above-captioned court, located at 1301 Clay Street,

4    Oakland, CA, Plaintiffs in these consolidated actions, TAIRA DE BERNARDI, et al., and

5    ABDULLAH WAZWAZ., et al. ("Plaintiffs") and Defendant CITY AND COUNTY OF SAN

6    FRANCISCO ("Defendant"), by and through their respective counsel of record, will submit this

7    joint (unopposed) motion for final approval of an FLSA collective action settlement.

8    The Parties are in the final stages of settlement on these cases.  After the Court

9    preliminarily approved the global settlement, the third party administrator sent notices to all opt-in

10   Plaintiffs, received and processed hundreds of signed releases and two objections, and provided its

11   final accounting to the parties, and the City stated its intention to proceed with finalizing the

12   settlement.  The parties do so now.  This Motion is based on this notice, the supporting joint

13   memorandum of points and authorities and attached exhibits, and the Declarations of Gregg

14   McLean Adam ("Adam Dec."), Wendi J. Berkowitz ("Berkowitz Dec.") and David E. Mastagni

15   (Mastagni Dec.") served and filed herewith; the papers and records on file herein; and on such oral

16   and documentary evidence as may be presented at the hearing.

17   Dated:  December 10, 2021                MESSING ADAM & JASMINE LLP

18

19

20                                        By    /s/ Gregg McLean Adam
                                               Gregg McLean Adam
21                                             Wendi J. Berkowitz
                                               Attorneys for Plaintiffs
22                                             TAIRA DE BERNARDI, STEPHEN VAL
                                               KIRWAN, et al.
23

24

25

26

27

28

MESSING ADAM &
JASMINE LLP
ATTORNEYS AT LAW

Dated:  December 10, 2021                     MASTAGNI HOLSTEDT, APC

By _____/s/ David E. Mastagni_____
DAVID E. MASTAGNI
TAYLOR DAVIES-MAHAFFEY
Attorneys for Plaintiffs
ABDULLAH WAZWAZ, JASON MOORE,
KENNETH YEUNG and BRIAN KAM, on behalf
of themselves and all similarly situated individuals

Dated:  December 10, 2021                     OFFICE OF THE CITY ATTORNEY

By _____/s/ Jonathan C. Rolnick_____
DAVID CHIU, City Attorney
JONATHAN C. ROLNICK, Chief Labor Attorney
Attorneys for Defendant
CITY AND COUNTY OF SAN FRANCISCO

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

JOINT MEMORANDUM OF POINTS AND AUTHORITIES ....................................................1

I.      INTRODUCTION...............................................................................................................1

II.     STATEMENT OF RELEVANT FACTS ...........................................................................1

III.    PROCEDURAL HISTORY ................................................................................................2

IV.     THE SETTLEMENT ..........................................................................................................3

V.      LEGAL STANDARD .........................................................................................................5

VI.     ARGUMENT ......................................................................................................................6

        A.      Bona Fide Dispute ..................................................................................................6

                1.      The Settlement Provides Plaintiffs With Full Liquidated Damages. ............7

                2.      The Settlement Provides For A Three (3) Year Statute of
                        Limitations. ...................................................................................................9

        B.      The Proposed Settlement is a Fair and Reasonable Resolution of Plaintiffs'
                Claims...................................................................................................................10

                1.      Plaintiffs' Range of Possible Recovery......................................................10

                2.      The Stage of the Proceedings and the Amount of Discovery
                        Conducted....................................................................................................11

                3.      The Seriousness of the Litigation Risks Faced by the Parties.....................12

                4.      The Scope of Any Release Provision in the Settlement Agreement ............12

                5.      The Experience and Views of Counsel .......................................................13

                6.      The Possibility of Fraud or Collusion ........................................................13

                7.      Attorneys' Fees and Costs..........................................................................13

                8.      Incentive Award to De Bernardi Lead Plaintiffs.........................................15

VII.    CONCLUSION .................................................................................................................16

# TABLE OF AUTHORITIES

1
2

**Page**

3

## FEDERAL CASES

4

*Alvarez v. IBP, Inc.*
    339 F.3d 894 (9th Cir. 2003)...............................................................................9

5

*Bellinghausen v. Tractor Supply Co.*
    306 F.R.D. 245 (N.D. Cal. 2015) .......................................................................12

6

*Camacho v. Bridgeport Fin., Inc.*
    523 F.3d 973 (9th Cir. 2008)...............................................................................14

7
8

*Carson v. Billings Police Dept.*
    470 F.3d 889 (9th Cir. 2006)...............................................................................14

9

*Flores v. City of San Gabriel*
    824 F.3d 890 (9th Cir. 2016).................................................................................9

10
11

*Hensley v. Eckerhart*
    461 U.S. 424  (1983) ..........................................................................................13

12

*Khanna v. Inter-Con Sec. Sys., Inc.*
    No. CIV S-09-2214 KJM, 2013 WL 1193485 (E.D. Cal. Mar. 22, 2013)............6

13
14

*Larsen v. Trader Joe's Co.*
    2014 WL 3404531 (N.D. Cal. Jul. 11, 2014) ....................................................13

15

*Linney v. Cellular Alaska P'ship*
    151 F.3d 1234 (9th Cir. 1998).............................................................................11

16
17

*Local 246 Utility Workers Union of Am. v. S. Cal. Edison Co.*
    83 F.3d 292 (9th Cir. 1996).............................................................................7, 8

18

*Lynn's Food Stores, Inc. v. United States*
    679 F.2d 1350 (11th Cir. 1982).........................................................................5, 7

19
20

*McKeen-Chaplin v. Franklin Am. Mortg. Co.*
    No. C 10-5243 SBA, 2012 WL 6629608 (N.D. Cal. Dec. 19, 2012)...................6

21

*McLaughlin v. Richland Shoe Co.*
    486 U.S. 128 (1988) ............................................................................................9

22
23

*Moreno v. Regions Bank*
    729 F. Supp. 2d 1346 (M.D. Fla. 2010) ............................................................12

24

*Nen Thio v. Gengi, LLC*
    14 F. Supp. 3d 1324 (N.D. Cal. 2014) .............................................................5, 7

25
26

*Ontiveros v. Zamora*
    303 F.R.D. 356 (E.D. Cal. 2014)........................................................................11

27

28

MESSING ADAM &
JASMINE LLP
ATTORNEYS AT LAW

**TABLE OF AUTHORITIES**
(Continued)

**Page**

*Selk v. Pioneers Memorial Healthcare District*
    159 F. Supp. 3d 1164 (S.D. Cal. 2016) ........................................................... 5, 10

*Slezak v. City of Palo Alto*
    No. 16-CV03224-LHK, 2017 WL 2688224 (N.D. Cal. June 22, 2017) ................ 10, 12, 13

*Wren v. RGIS Inventory Specialists*
    2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) .................................................. 14

**FEDERAL STATUTES**

United States Code
    29 U.S.C. § 201 et. seq. ................................................................................ 1
    29 U.S.C. § 207 ................................................................................... 1, 3, 9
    29 U.S.C. § 216 ................................................................................... 7, 13
    29 U.S.C. § 255 ......................................................................................... 9
    29 U.S.C. § 260 ......................................................................................... 7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

## JOINT MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.

3

## INTRODUCTION

4    These cases arise from alleged violations of the Fair Labor Standards Act (29 U.S.C. § 201

5    et. seq.) ("FLSA"). Plaintiffs in both cases allege Defendant violated the FLSA by failing to cash

6    out compensatory time off ("CTO") at the statutorily required "regular rate" of pay. 29 U.S.C.

7    § 207(o)(3)-(4). Accordingly, Plaintiffs brought the instant actions to recover unpaid overtime

8    compensation, interest thereon, liquidated damages, costs of suit, and reasonable attorney fees.

9    After the Court preliminarily approved the parties' global settlement on June 1, 2021 (*De*

10    *Bernardi*, Dkt. No. 99; *Wazwaz*, Dkt. No. 127), the parties proceeded, with the substantial

11    assistance of the third party administrator, BrownGreer ("BrownGreer"), to fulfill the remaining

12    settlement terms.  Having done so, the parties now seek final approval of the settlement from the

13    Court.

14

## II.

15

## STATEMENT OF RELEVANT FACTS

16    Plaintiffs are current and former employees of Defendant. Plaintiffs in the *Wazwaz* action

17    worked in the City's Sheriff's Department and are current and former members of the San

18    Francisco Deputy Sheriff's Association ("DSA") and Sheriff Managers and Supervisor's

19    Association ("MSA"). Plaintiffs in the *De Bernardi* action worked in the San Francisco Police

20    Department as well as numerous City departments other than the Sheriff's Department. Many of

21    the *De Bernardi* Plaintiffs are current and former members of the San Francisco Police Officers'

22    Association, Units P-1 and P2A ("SFPOA"). The SFPOA, DSA, MSA and the many other

23    bargaining agents that represent the Plaintiffs have Memoranda of Understanding ("MOUs") with

24    Defendant which govern, in part, the terms and conditions of employment applicable to employees

25    in each respective bargaining unit.

26    At all times relevant hereto, Plaintiffs were eligible to earn CTO in lieu of overtime

27    compensation. See Declaration of David E. Mastagni ("Mastagni Decl.") ¶ 13; Declaration of

28

Gregg Adam ("Adam Decl.") ¶ 7, submitted herewith. Pursuant to the applicable MOU terms, Plaintiffs earned and used compensatory time off in lieu of overtime compensation.

Before December 1, 2018, Defendant cashed out CTO (e.g., upon separation and/or promotion) at the base rate of pay which, in many cases, was less than the "regular rate" as required by the FLSA. Mastagni Decl., ¶ 14; Adam Decl., ¶ 8. Similarly, when compensating Plaintiffs who used their accrued CTO, Defendant used the base rate of pay rather than the regular rate. *Id.* On November 19, 2018 (as well as before then, in communications with the SFPOA and its attorneys), Defendant acknowledged that it had been using the base rate of pay when cashing out CTO or paying employees who used accrued CTO. Moreover, Defendant represented that going forward it would use the regular rate of pay to calculate CTO. Defendant represented that it would recalculate the difference between the "regular rate" of pay and the base rate for any CTO cashed out and/or used between July 30, 2015 and November 30, 2018 (for the *De Bernardi* Plaintiffs) and September 12, 2015 and November 30, 2018 (for the *Wazwaz* Plaintiffs), and pay the affected Plaintiffs accordingly. Mastagni Decl., ¶ 14; Adam Decl., ¶¶ 9-11 and 13-14, and Exhs. 1-5.

### III.

### PROCEDURAL HISTORY

On July 30, 2018, the named Plaintiffs in the *De Bernardi* action filed a complaint on behalf of themselves and all similarly situated current and former employees of Defendant affected by Defendant's failure to pay CTO at the "regular rate". *De Bernardi*, Dkt. No. 1. On September 12, 2018, the named Plaintiffs in the *Wazwaz* action filed a complaint alleging identical CTO-related claims to those asserted in the *De Bernardi* action, as well as allegations that Defendant also excluded cash incentives paid to DSA and MSA plaintiffs for possessing intermediate and advanced POST certificates ("POST Pay") from the calculation of the "regular rate" of pay. *Wazwaz*, Dkt. No. 1. Defendant filed Answers in both actions denying Plaintiffs' material allegations and asserting various affirmative defenses thereto. *De Bernardi*, Dkt. No. 14; *Wazwaz*, Dkt. No. 24.

On December 11, 2018, the Honorable Haywood S. Gilliam, Jr. issued an Order relating the *Wazwaz* action to the *De Bernardi* action. *De Bernardi*, Dkt. No. 32. Shortly thereafter, in the interest of efficiency and to prevent duplication of efforts, counsel in the *Wazwaz* and *De Bernardi* actions jointly stipulated to consolidate the actions for pre-trial purposes. On January 24, 2019, the Court granted the parties' stipulation and consolidated the actions for pre-trial purposes only, and referred the cases to a magistrate judge for a settlement conference. *De Bernardi*, Dkt. No. 42; *Wazwaz*, Dkt. No. 52. On March 13, 2019, the Court granted the parties' stipulations to conditionally certify their respective actions as FLSA collective actions and provide notice to affected employees. *De Bernardi*, Dkt. No. 47; *Wazwaz*, Dkt. No. 65. Following the notice period, a total of 1,830 combined Plaintiffs opted into the actions. On November 19, 2019, the Honorable Magistrate Judge Jacqueline Corley held a settlement conference, wherein the parties reached a settlement in principle of both cases. See *De Bernardi* Dkt. No. 74; *Wazwaz* Dkt. No. 101.

On June 1, 2021, the Court granted preliminary approval to the settlement. *De Bernardi*, Dkt. No. 99, *Wazwaz*, Dkt. No. 127. On June 15, 2021, the Court issued a Scheduling Order setting forth dates for the remaining settlement tasks to be completed. *De Bernardi*, Dkt. No. 101, *Wazwaz*, Dkt. No. 129. The parties have complied with each of those dates. On October 29, 2021, BrownGreer released the final accounting of releases and objections to the parties. Berkowitz Dec., Exh. 1. On November 15 and 16, 2021, the City filed its Notice of Intention to proceed to final settlement of the case. *De Bernardi*, Dkt. No. 103, *Wazwaz*, Dkt. No. 131.

## IV.

## THE SETTLEMENT

Under the FLSA, an employer must compensate employees for cashed out or used CTO at their "regular rate" of pay. 29 U.S.C. § 207(o)(3)-(4). Defendant has already paid affected Plaintiffs and other employees backpay for the difference, if any, between the base rate of pay and the regular rate for CTO used or cashed out during the three-years preceding November 30, 2018. The FLSA further provides, with limited exceptions, for liquidated damages (or interest) for violations of the Act. To date, Defendant has not paid liquidated (i.e., double) damages for

1   Plaintiffs' claims in these actions. These actions involve a dispute over whether Plaintiffs are

2   entitled to liquidated damages and a three-year recovery period.

3       Rather than engage in protracted litigation, the parties agreed to settle Plaintiffs' claims for

4   a total settlement amount of $503,506.33, plus additional fees,  for the third party administrator's

5   activities in connection with transmitting settlement notices, administration of releases and

6   objections, communications with Plaintiffs regarding the releases and with counsel regarding the

7   status of releases and objections received, and the distribution of funds. Of the settlement funds,

8   $162,723.43[1] will be allocated to the Plaintiffs in both cases who have a valid FLSA claim

9   according to the schedule attached as Exhibit A-2 to the Settlement Agreement. The amount paid

10  to each of these Plaintiff is an amount essentially equal to the backpay amounts Defendant already

11  paid to affected Plaintiffs.

12      Additionally, the settlement includes a provision for reasonable attorneys' fees in the

13  amount of $217,500; the already-incurred cost of a third-party settlement administrator in the

14  amount of $94,000 (plus additional TPA fees of $54,891.82 incurred through October 31, 2021

15  and up to $10,000 to cover disbursement of settlement proceeds); and provides for a class

16  representative incentive award of $1,250 to each of the two lead named *De Bernardi* Plaintiffs. A

17  true and correct copy of the Settlement Agreement executed by the named parties and their

18  counsel is attached hereto as Exhibit A.

19      The settlement provides no recovery to certain Plaintiffs, identified in Exhibit A-3 of the

20  Settlement Agreement. A review of payroll records showed that these Plaintiffs, approximately

21  two-thirds of those who filed consents, did not have recoverable CTO damages under the FLSA,

22  because they did not (1) earn CTO or (2) have compensatory time cashed out or used during the

23

---

24  [1] The amount payable to Plaintiffs has decreased from the originally allocated $192,006.33 to
    $162,723.43, as not every "Recovery Plaintiff" signed a release. Per the Settlement Agreement,
25  only those Plaintiffs who signed a release will receive settlement funds. Accordingly, although the
    City will pay the third party administrator the agreed-upon $192,006.33 allocated to Plaintiffs,
26  under paragraph 7.d. of the Settlement Agreement, once the settlement payments have all been
    disbursed, the third party administrator will reimburse the City in the amount of $29,282.90 (the
27  amount attributable to the Recovery Plaintiffs who did not sign releases), resulting in final
    payment to Recovery Plaintiffs of $162,723.43. Adam Dec., ¶ 16(a) and Berkowitz Dec., Exh. 1.

28

1    applicable recovery period, or (3) earn premiums that should have been included in the regular rate

2    of pay for their compensatory time during the applicable recovery period. Under the Settlement

3    Agreement, the parties seek dismissal without prejudice of these Plaintiffs, at the time the Court

4    enters an order of final approval of the settlement.  See Settlement Agreement paragraphs 1(f),

5    1(h), and 7(d).  As well, the parties seek dismissal without prejudice of the Recovery Plaintiffs

6    who did not sign releases, identified in Berkowitz Dec., Exh. 1, pages 12-17 (entitled "Release

7    Not Submitted").  Finally, the parties seek dismissal with prejudice of the Recovery Plaintiffs who

8    signed releases, identified in Berkowitz Dec., Exh. 1, pages 4-11 (entitled "Release Submitted").

9        As discussed below, taken as a whole, the settlement is fair and reasonable and warrants

10    approval by this Court.

## V.

## LEGAL STANDARD

13        Courts have determined that the provisions of the FLSA are mandatory and cannot

14    generally be abridged by contract or otherwise waived. *Lynn's Food Stores, Inc. v. United States*,

15    679 F.2d 1350, 1352 (11th Cir. 1982). However, when employees bring a private action for

16    compensation under the FLSA, and present the District Court with a proposed settlement, the

17    District Court may enter a judgment after scrutinizing the settlement for fairness. *Id*. at 1353.

18    District courts in the Ninth Circuit follow the analytical framework outlined in *Lynn's Food

19    Stores. See, e.g.*, *Selk v. Pioneers Memorial Healthcare District*, 159 F. Supp. 3d 1164, 1172 (S.D.

20    Cal. 2016) (FLSA claims may be waived through court supervised settlement agreement)(citation

21    omitted); *Nen Thio v. Gengi, LLC*, 14 F. Supp. 3d 1324, 1333-34 (N.D. Cal. 2014) (court has the

22    power to approve FLSA settlement that is "a fair and reasonable resolution of a bona fide

23    dispute") (citation omitted). "A bona fide dispute exists when there are legitimate questions about

24    the existence and extent of Defendant's FLSA liability." *Id.* [Internal quotation marks and citation

25    omitted].

26        Once it is established that there is a bona fide dispute, courts often apply the Rule 23

27    factors for assessing proposed class action settlements when evaluating the fairness of an FLSA

28

settlement, while recognizing that some of those factors do not apply because of the inherent

differences between class actions and FLSA actions. *Khanna v. Inter-Con Sec. Sys., Inc.*, No. CIV

S-09-2214 KJM, 2013 WL 1193485, at *2 (E.D. Cal. Mar. 22, 2013). To determine whether the

proposed FLSA settlement is fair, adequate, and reasonable, courts in this circuit have balanced

factors such as:

> "the strength of the plaintiffs' case; the risk, expense, complexity, and
> likely duration of further litigation; the risk of maintaining class
> action status throughout the trial; the amount offered in settlement;
> the extent of discovery completed and the stage of the proceedings;
> the experience and views of counsel; the presence of a governmental
> participant; and the reaction of the class members to the proposed
> settlement." *Khanna v. Intercon Sec. Sys., Inc.*, No. 2:09-CV-2214
> KJM EFB, 2014 WL 1379861, at *6 (E.D. Cal. Apr. 8, 2014), order
> corrected, No. 2:09-CV-2214 KJM EFB, 2015 WL 925707 (E.D. Cal.
> Mar. 3, 2015).

With this approach, a "district court must ultimately be satisfied that the settlement's

overall effect is to vindicate, rather than frustrate, the purposes of the FLSA." *Id.* Settlements that

reflect a fair and reasonable compromise of issues that are actually in dispute may be approved to

promote the efficiency of encouraging settlement of litigation. *McKeen-Chaplin v. Franklin Am.*

*Mortg. Co.*, No. C 10-5243 SBA, 2012 WL 6629608, at *2 (N.D. Cal. Dec. 19, 2012).

## VI.

## ARGUMENT

In order to approve the settlement in the instant case, the Court must find that (1) the case

involves a bona fide dispute, (2) the proposed settlement agreement is fair and reasonable, and (3)

the award of attorney's fees and costs are reasonable.

### A.     Bona Fide Dispute

The proposed settlement resolves a bona fide dispute between the parties regarding

legitimate questions over the existence and extent of Defendant's liability, if any. "If a settlement

in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA

coverage or computation of back wages, that are actually in dispute[,] ... the district court [may]

approve the settlement in order to promote the policy of encouraging settlement of litigation." *Nen*

*Thio, supra,* , 14 F. Supp. 3d at 1333 ; *Lynn's Food Stores*, *supra*, 679 F.2d at 1353 n.8 (requiring "settlement of a bona fide dispute between the parties with respect to coverage or amount due under the [FLSA]"). The purpose of this analysis is to ensure that an employee does not waive claims for wages, overtime compensation, or liquidated damages when no actual dispute exists between the parties. *Ibid*.

Here, the parties' settlement resolves two key questions over Defendant's liability – "willfulness" and "good faith." Although Defendant voluntarily[2] issued retroactive back payments to all affected City employees, the amount of potential recovery that remains within the scope of these lawsuits (i.e. liquidated damages and applicable statute of limitations) depends on the outcome of these unresolved disputes. Defendant maintains that its failure to pay CTO at the "regular rate" was done so in good faith, thereby eliminating Plaintiffs' claim for liquidated damages, and was not willful, thereby limiting the statute of limitations on Plaintiffs' claims to two years. If Defendant succeeded in proving either or both of these contentions, it would dramatically reduce or eliminate any recovery by Plaintiffs.

### 1.    The Settlement Provides Plaintiffs With Full Liquidated Damages.

An employer who violates the FLSA "shall be liable to the employee or employees affected in the amount of their … unpaid overtime compensation, … and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). "These liquidated damages represent compensation, and not a penalty. Double damages are the norm, single damages the exception." *Local 246 Utility Workers Union of Am. v. S. Cal. Edison Co.,* 83 F.3d 292, 297 (9th Cir. 1996). Only if an employer shows it acted in "good faith" and had "reasonable grounds" to believe that its actions did not violate the FLSA may a court deny liquidated damages. 29 U.S.C. § 260. To avail itself of this defense, the employer must "establish that it had 'an honest intention to

---

[2] Plaintiffs and Defendant disagree on whether Defendants' issuance of backpay resulted from Plaintiffs' pre-lawsuit demands and the filing of the *De Bernardi* and *Wazwaz* actions (Plaintiffs' position) or was unprompted action by the City, unrelated to Plaintiffs' demands or lawsuits (Defendant's position).

ascertain and follow the dictates of the Act' and that it had 'reasonable grounds for believing that [its] conduct complie[d] with the Act.'" *Local 246, supra*, 83 F.3d at 298.

Here, the parties' settlement provides for a virtual award of full, non-discounted liquidated damages.[3] However, should Defendant proffer evidence establishing that it actively endeavored to ensure its practices complied with the FLSA and prevail on this issue, Plaintiffs' liquidated damages would be eliminated.

Based on *Wazwaz* Plaintiffs' analysis of the payroll records, it appeared Defendant was not including POST Pay in its calculation of the "regular rate." Through discovery in the *Wazwaz* action, Defendant produced documents and information demonstrating that POST Pay was included in the regular rate during the relevant time period. Because POST Pay was blended with the Plaintiffs' base salary, the pay records did not reflect this inclusion. The parties met and conferred and confirmed their agreement on its inclusion. As such, Plaintiffs are provided back pay in the Settlement Agreement for the underpayment of CTO, only. Mastagni Decl., ¶ 16.

Of the 1,830 total opt in Plaintiffs in *De Bernardi* and *Wazwaz*, the parties concluded based on a review of payroll records that approximately two-thirds did not have a valid FLSA claim for CTO damages, because they either did not earn compensatory time or have compensatory time cashed out during the applicable recovery period, or they did not earn premiums that should have been included in the regular rate of pay for their compensatory time during the applicable recovery period.

---

[3] Although the Settlement Agreement states the payments to Plaintiffs "shall be considered and treated as interest on the back wages" that the City already paid to Plaintiffs, they represent the full equivalent of the opt-in Plaintiffs' liquidated damages for purposes of the parties' settlement negotiations. Although the amounts paid to some Plaintiffs as "interest" differ slightly from the amounts the City paid these Plaintiffs in backpay, the difference occurs because the "interest" payments were calculated using a three-year look-back period from the date each Plaintiff opted in, whereas the City issued back pay to all individuals who had been improperly underpaid for their CTO, whether or not they opted in, based a three-year time period ending on a date certain that extended farther back than the opt-in date look-back period. Accordingly (and depending on when the relevant CTO was used or cashed out), some Plaintiffs lost liquidated damages that fell outside three-year look-back period that began with their opt-in date, even though they were paid the corresponding backpay.

1

### 2.     The Settlement Provides For A Three (3) Year Statute of Limitations.

2      A three-year statute of limitations applies for willful violations of the FLSA. 29 U.S.C.

3  § 255(a). An FLSA violation is willful when the employer either knew or showed reckless

4  disregard for the matter of whether its conduct was prohibited by the FLSA. *McLaughlin v.*

5  *Richland Shoe Co.*, 486 U.S. 128, 133 (1988). An employer need not violate the statute knowingly

6  for its violation to be considered willful – a violation may be willful "where an employer

7  disregarded the very 'possibility' that it was violating the statute." *Alvarez v. IBP, Inc.*, 339 F.3d

8  894, 908-909 (9th Cir. 2003). Employers cannot avoid a finding of willfulness even in situations

9  where there was no "binding authority" on point. In *Flores v. City of San Gabriel*, 824 F.3d 890

10  (9th Cir. 2016), the Ninth Circuit held such a finding was unnecessary, explaining "[i]t is likely to

11  be the exception, rather than the rule, that controlling case law addresses the precise question

12  faced by an employer trying to determine its obligations under the FLSA…" *Id.*, 824 F.3d at 906.

13      Here, Plaintiffs contend that Defendant, at the very least, recklessly disregarded the

14  possibility that its conduct violated the FLSA because the obligation to pay CTO at the "regular

15  rate" appears on the face of the statute. 29 U.S.C. § 207(o)(3)-(4). Plaintiffs further contend

16  Defendant was on actual notice of its obligation to pay overtime compensation at the "regular

17  rate" of pay. Defendant has been previously sued by members of the DSA over similar regular rate

18  issues. Mastagni Decl., ¶ 15. And counsel for the *De Bernardi* Plaintiffs informed Defendant,

19  before filing the *De Bernardi* complaint, that Defendant was in violation of the FLSA for failing to

20  cash out or pay CTO at the regular rate of pay. Adam Dec., ¶¶ 9-11.

21      In response to Plaintiffs' arguments on willfulness, Defendant contended that because it

22  voluntarily provided three years (or more) backpay to all affected City employees (even those who

23  did not opt in to either of the lawsuits), it should not be obligated to provide three years of

24  liquidated damages. Thus, the issue regarding a third year of damages still exists. The outcome of

25

26

27

28

this issue alone could affect the settlement value, at least as to the opt-in Plaintiffs, by as much as one-third.[4]

Accordingly, the extent of Defendant's liability as measured by the applicable statute of limitations is another disputed issue. The fact that the parties' settlement resolves this disputed issue also weighs in favor of approving the settlement.

**B.    The Proposed Settlement is a Fair and Reasonable Resolution of Plaintiffs' Claims**

To determine whether a FLSA settlement is fair and reasonable, courts evaluate the "totality of the circumstances" within the context of the purposes of the FLSA. *Slezak v. City of Palo Alto*, No. 16-CV03224-LHK, 2017 WL 2688224, at *3 (N.D. Cal. June 22, 2017). Courts in the Ninth Circuit have considered the following factors when determining whether a settlement is fair and reasonable under the FLSA: (1) the plaintiff's range of possible recovery; (2) the stage of proceedings and amount of discovery completed; (3) the seriousness of the litigation risks faced by the parties; (4) the scope of any release provision in the settlement agreement; (5) the experience and views of counsel and the opinion of participating plaintiffs; and (6) the possibility of fraud or collusion. See *Selk*, *supra*, 159 F.Supp.3d at 1173.

**1.    Plaintiffs' Range of Possible Recovery**

Under the FLSA, the maximum amount a plaintiff can recover is twice the amount of underpaid wages for the three-year period before opting into the lawsuit (i.e., an award of liquidated damages coupled with a finding the violation was willful). Here, Plaintiffs with a valid FLSA claim are recovering full liquidated damages for the maximum recovery period (i.e. the value of three years of liquidated damages calculated based on each recovering Plaintiff's opt-in date). This represents the maximum amount Plaintiffs could hope to obtain if these cases proceeded to trial, albeit without the risk and delay of further litigation.

---

[4] This is a rough estimation because much depends on when, in the look-back period, a Plaintiff cashed out or used his/her/their CTO. If the FLSA violation(s), or some portion of them, occurred between two and three years before the Plaintiff filed an opt-in form, then the significance of the difference in damages resulting from a two-year period versus a three-year period is contingent upon the magnitude of the violations occurring during this period, as compared to those occurring within two years before opt-in.

This is a prompt, significant, and certain recovery, especially given the risks presented by continued litigation. As noted above, a denial of liquidated damages alone would cut in half the opt-in Plaintiffs' recovery (which includes the backpay the City already issued). Since Plaintiffs already received the backpay the City owed (and these payments were not made conditional in any way), a jury's rejection of a liquidated damages award would, in essence, spell no recovery for the Plaintiffs at this juncture. Thus, the settlement affords the Plaintiffs prompt, substantial relief, while avoiding significant legal and factual hurdles that otherwise might prevent them from obtaining a favorable recovery.

While counsel for the all parties believe their positions are meritorious, they are experienced and realistic, and understand that the resolution of the key issues, the outcome of a trial, and the outcome of any appeals that may follow, are inherently uncertain in terms of both outcome and duration. Mastagni Decl., ¶ 24; Adam Decl., ¶ 21. Accordingly, this factor weighs in favor of approval of the settlement because the interests of the Plaintiffs are better served by settlement than the attendant risks of further litigation.

### 2.    The Stage of the Proceedings and the Amount of Discovery Conducted

Courts assess the stage of the proceedings and the amount of discovery completed to ensure that parties have an adequate appreciation of the merits of the case before reaching a settlement. See *Ontiveros v. Zamora*, 303 F.R.D. 356, 371 (E.D. Cal. 2014) ("A settlement that occurs in an advanced stage of the proceedings indicates that the parties carefully investigated the claims before reaching a resolution."). As long as the parties have "sufficient information to make an informed decision about settlement," this factor will weigh in favor of approval. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).

Here, the parties have sufficient information to make an informed decision regarding settlement. Specifically, Plaintiffs propounded discovery to obtain the necessary evidence (i.e., time and payroll records, discovery relating to willfulness) to form an adequate appreciation of the merits of the cases before reaching the proposed settlement. Mastagni Dec., ¶ 19; Adam Decl., ¶ 19. Accordingly, this factor also weighs in favor of settlement. Additionally, the parties engaged

in a settlement conference with the Honorable Magistrate Judge Jacqueline Corley, which resulted in the fair and reasonable settlement of both cases. See *De Bernardi*, Dkt. No. 74; *Wazwaz*, Dkt. No. 101.

### 3. The Seriousness of the Litigation Risks Faced by the Parties

Settlement is favored where "there is a significant risk that litigation might result in a lesser recover[y] for the class or no recovery at all." *Bellinghausen v. Tractor Supply Co*., 306 F.R.D. 245, 255 (N.D. Cal. 2015). As discussed above, although liability is certain with respect to Plaintiffs' underpayment of CTO claims, it is less certain with respect to liquidated damages and the applicable statute of limitations. Plaintiffs may not recover at trial any damages based upon the Defendant's alleged willfulness (which would reduce the recovery period in the proposed settlement from three years to two years) or Defendant's alleged lack of good faith, which would eliminate any additional Plaintiff damages. Accordingly, this factor also weighs in favor of approval of settlement.

### 4. The Scope of Any Release Provision in the Settlement Agreement

"A FLSA release should not go beyond the specific FLSA claims at issue in the lawsuit itself." *Slezak*, *supra*, 2017 WL 2688224, at *5. Expansive releases of claims would allow employers to unfairly extract valuable concessions from employees using wages that they are guaranteed by statute. *See Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1351 (M.D. Fla. 2010) ("An employee who executes a broad release effectively gambles, exchanging unknown rights for a few hundred or a few thousand dollars to which he is otherwise unconditionally entitled.").

Here, the release does not go beyond the specific FLSA claims at issue in *Wazwaz* and *De Bernardi*. The release is limited to "any and all liabilities, claims, … connected with or related in any way to the payment of overtime (*Wazwaz*) and/or the cash out or use of compensatory time (*De Bernardi* and *Wazwaz*)," **as asserted in the Action** …" See Settlement Agreement, Exhibit A, page 6 [emphasis added]. Thus, the release does not extend to claims outside the scope of these two lawsuits. Such a narrowly-tailored and carefully drawn release favors approval of settlement.

1

### 5.     The Experience and Views of Counsel

In determining whether a settlement is fair and reasonable, "[t]he opinions of counsel

should be given considerable weight both because of counsel's familiarity with th[e] litigation and

previous experience with cases." *Larsen v. Trader Joe's Co*., 2014 WL 3404531, *5 (N.D. Cal.

Jul. 11, 2014). Here, *Wazwaz* Plaintiffs' counsel David Mastagni and *De Bernardi* Plaintiffs'

counsel Gregg Adam, assert that the terms of the Settlement Agreement are fair and reasonable,

and that the settlement amount is within the maximum range that Plaintiffs could expect to recover

if this matter were to proceed to trial. Mastagni Decl., ¶¶ 20; Adam Decl., ¶¶ 19-22. Both David

Mastagni and Gregg Adam have years of experience litigating FLSA claims and have settled

multiple FLSA claims and obtained court approval of those settlements. Mastagni Decl., ¶ 6;

Adam Decl., ¶¶ 2-5. As such, their individual evaluations of their cases are reliable.

Given the above, this factor also weighs in favor of approval of the settlement.

### 6.     The Possibility of Fraud or Collusion

"The likelihood of fraud or collusion is low ... [when] the Settlement was reached through

arm's-length negotiations, facilitated by an impartial mediator." *Slezak*, *supra*, 2017 WL 2688224,

at *5. Here, at all times, settlement negotiations have been at arms-length and there has been no

fraud or collusion. Magistrate Judge Corley oversaw the parties' settlement conference as a neutral

mediator and significantly contributed to achieving this global accord. Mastagni Decl., ¶¶ 17;

Adam Decl. ¶¶ 15, 17, 19-20. In addition, each Plaintiff was afforded notice of this settlement and

given an opportunity to either participate or decline. Berkowitz Dec., Exh. 1.  Out of the 1,830

notices sent, only two individuals (both "No Recovery" Plaintiffs), expressed any objection to the

settlement. *Id.* Accordingly, this factor also weighs in favor of approval.

### 7.     Attorneys' Fees and Costs

The court must award reasonable attorney fees and costs to Plaintiffs and all similarly

situated employees if they prevail on any significant issue in this case. 29 U.S.C. § 216(b);

*Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Plaintiffs' counsel is entitled to receive an award

of fees for all hours reasonably expended at rates in line with the "prevailing market rate of the

relevant community." *See Carson v. Billings Police Dept.*, 470 F.3d 889, 891 (9th Cir. 2006). The "prevailing market rate" is the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008). The relevant community is the forum in which the district court sits. *Id*. at 979. In this case, the community is the Northern District of California. In *Wren v. RGIS Inventory Specialists*, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011), a court in this district awarded an hourly rate of $650 to an attorney with 17 years of experience, and rates ranging from $325 to $450 per hour for associates with less experience in an FLSA case. *Id*. at *19. Moreover, in *Wren*, an hourly rate of $150 was awarded to a paralegal. *Id*.

When evaluating counsel's claim for attorney fees, it is important to consider that Defendant issued corrective payments **to all affected City employees**, totaling approximately $1.4 million and, Plaintiffs contend, this was in direct response to the filing of these two lawsuits. In addition, should the settlement be approved, Plaintiffs will have recovered another approximately $162,000, for a combined total of just under $1.6 million in payments to City employees. The settlement agreement includes a payment of $217,500 to the two firms representing Plaintiffs separately in both cases (i.e. $150,000 to counsel for the *De Bernardi* Plaintiffs; $65,000 to counsel for the *Wazwaz* Plaintiffs). This amount is payment for reasonable fees and costs incurred to date, as well fees and costs to be incurred obtaining Court approval.

As of December 2, 2021, counsel for the *Wazwaz* Plaintiffs expended a total of 346.97hours in this matter, exclusive of time spent finalizing preliminary approval and final approval motions, and attending any hearings arising therefrom. Counsel for the *Wazwaz* Plaintiffs additionally incurred costs in the amount of $4,408.10. This amount includes a $3,587.45 payment to BrownGreer, the third party claims administrator, for mailing and facilitating the notice of collective action to putative plaintiffs. Applying hourly rates previously approved in this District to the hours reasonably expended on this matter to date by counsel for the *Wazwaz* Plaintiffs would result in a range of fees from $145,999.50 on the high end to $104,832.50 on the low end . Instead, counsel for the *Wazwaz* Plaintiffs seek approval of a substantially reduced amount

($65,000) for *all* firm time expended on this matter, including hours reasonably expended by paralegals and staff, as well as costs. See Mastagni Decl., ¶¶ 26-34.

As of November 29, 2021, Counsel for the *De Bernardi* Plaintiff have expended a total of 679.4 hours on the case (which have been discounted to 450.7 hours, to include only the time of lead counsel Gregg Adam and experienced employment litigator Wendi Berkowitz), and incurred non-third party administrator costs of approximately $3,000. As part of this settlement, the City will pay directly to BrownGreer the $94,000 third party administrator class notice fee, which was incurred at Defendant's request but has not yet been paid.[5] Applying rates of $600 per hour to Gregg Adam's time, and $450 per hour to Wendi Berkowitz's time would yield a fee award of $216,855. *De Bernardi* counsel seek a fee award of $150,000, well below the value of the time actually expended by counsel (which, if counted in its entirety, would result in a fee award exceeding $300,000), and equaling approximately 10 percent of the actual benefit (i.e., total backpay paid to all City employees plus liquidated damages to *De Bernardi* opt-in Plaintiffs) resulting from counsel's efforts. Adam Decl., ¶¶ 17, 23-26.

### 8.    Incentive Award to De Bernardi Lead Plaintiffs

The Settlement Agreement also contains a modest incentive award of $1,250 to each of the two named Plaintiffs in the *De Bernardi* case, Taira De Bernardi and Stephen Val Kirwan. Incentive awards to lead plaintiffs in class and collective actions are common, and intended to compensate for the time and risk undertaken by lead plaintiffs in prosecuting the case.  The *De Bernardi* lead plaintiffs provided substantial assistance justifying the incentive awards, including providing CTO and pay documentation to counsel, engaging in strategy discussions, acting as information conduits between the attorneys and other class members, appearing for the full-day settlement conference, and being prepared at all times to testify at deposition and at trial, had either of those become necessary.  Adam Dec., ¶ 18.

---

[5] The TPA mailed the multi-page notice to over 25,000 potential plaintiffs in *De Bernardi*, resulting in a much larger fee than that incurred in *Wazwaz*, an action involving less than 1,000 potential plaintiffs.

# VII.

## CONCLUSION

The parties' settlement resolves bona fide disputes over the existence and extent of Defendant's liability, if any, as to the issues of good faith and willfulness. Plaintiffs' potential recovery at trial, if any, remains unknown, but the parties believe the terms of the settlement are consistent with and within the range of a reasonable result that Plaintiffs could expect to obtain if they prevailed at trial. The parties further believe the agreed-upon amounts to be paid to Plaintiffs' counsel are fair and reasonable.

For all of these reasons the Parties respectfully and jointly request that the Court find that the settlement is fair and reasonable, and accordingly, order final approval of the settlement, including:

(i) Payment by the City, within 45 days after the date of the Order of Final Approval, under paragraphs 2 and 11 of the Settlement Agreement, as follows:

(a) $192,006.33 to the third party administrator for prompt distribution to Plaintiffs (subject to reimbursement by the third party administrator to the City, after all settlement payment have been disbursed, of $29,282.90, for a net recovery to Plaintiffs of $162,723.43);

(b) $150,000 to Messing Adam & Jasmine LLP, counsel for the *De Bernardi* Plaintiffs;

(c) $65,000 to Mastagni Holstedt, APC, counsel for the *Wazwaz* Plaintiffs;

(d) $1,250 each to Taira De Bernardi and Stephen Val Kirwan, lead plaintiffs in the *De Bernardi* case;

(e) $94,000.00 to BrownGreer, the third party administrator for fees incurred to October 31, 2021; and

(ii) Payment by the City to BrownGreer, within 15 days of BrownGreer's submission to the City of its final invoice, of an additional sum for fees to be incurred in administering and disbursing settlement proceeds; and

(iii) Dismissal without prejudice of all No Recovery Plaintiffs; and

1   (iv)    Dismissal without prejudice of any Recovery Plaintiffs who have not signed releases;

2   and

3   (v)    Dismissal with prejudice of all Recovery Plaintiffs who signed releases and had

4   settlement payments made to them.

5   Respectfully submitted:

6

7   Dated:  December 10, 2021           MESSING ADAM & JASMINE LLP

8

9                                       By _____/s/ Gregg McLean Adam_____

10                                      Gregg McLean Adam
                                        Wendi J. Berkowitz

11                                      Attorneys for Plaintiffs
                                        TAIRA DE BERNARDI, STEPHEN VAL

12                                      KIRWAN, et al.

13   Dated:  December 10, 2021           MASTAGNI HOLSTEDT, APC

14

15

16                                      By _____/s/ David E. Mastagni_____

17                                      DAVID E. MASTAGNI
                                        TAYLOR DAVIES-MAHAFFEY

18                                      Attorneys for Plaintiffs
                                        ABDULLAH WAZWAZ, JASON MOORE,

19                                      KENNETH YEUNG and BRIAN KAM, on behalf
                                        of themselves and all similarly situated individuals

20

21   Dated:  December 10, 2021           OFFICE OF THE CITY ATTORNEY

22

23                                      By _____/s/ Jonathan C. Rolnick_____

24                                      DAVID CHIU, City Attorney

25                                      JONATHAN C. ROLNICK, Chief Labor Attorney
                                        Attorneys for Defendant

26                                      CITY AND COUNTY OF SAN FRANCISCO

27

28

MESSING ADAM &
JASMINE LLP
ATTORNEYS AT LAW