UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAIRA DE BERNARDI, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO,<br><br>Defendant. | Case No. 18-cv-04597-HSG<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL**<br><br>Re: Dkt. No. 104 |
| ABDULLAH WAZWAZ, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO,<br><br>Defendant. | Case No. 18-cv-05580-HSG<br><br>Re: Dkt. No. 133 |

Pending before the Court are the unopposed motions for final approval of a FLSA collective action settlement filed by Plaintiffs in the matters of *De Bernardi, et al. v. City and County of San Francisco*, Case No. 4:18-cv-04597-HSG, and *Wazwaz, et al. v. City and County of San Francisco*, Case No. 4:18-cv-05580-HSG. *De Bernardi*, Dkt. No. 104; *Wazwaz*, Dkt. No. 133; ("Mot.").[1]  The Court held a final fairness hearing on January 20, 2022.  *See De Bernardi*, Dkt. No. 107; *Wazwaz*, Dkt. No. 135.  For the reasons detailed below, the Court **GRANTS** the motions.

---

[1] Because the motions for final approval filed in each action are identical, the Court refers to both as "Mot."

### I. BACKGROUND

#### A. Factual Background

As current and former employees of Defendant City and County of San Francisco, Plaintiffs in both cases allege that Defendant violated the Fair Labor Standards Act ("FLSA"). *De Bernardi*, Dkt. No. 1; *Wazwaz* Dkt. No. 1. The FLSA requires employers to compensate employees for cashed out or used compensatory time off ("CTO") at their "regular rate" of pay. 29 U.S.C. § 207(o)(3)-(4). Plaintiffs[2] allege that Defendant violated the FLSA by improperly calculating the regular rate of pay when cashing out CTO or paying employees who used accrued CTO. Mot. at 2.

In July 2018, Plaintiffs Taira De Bernardi and Stephen Val Kirwan ("*De Bernardi* Lead Plaintiffs") filed a complaint against Defendant for failure to pay the regular rate of pay for cash-out or use of CTO. *De Bernardi*, Dkt. No. 1. In September 2018, Plaintiffs Abdullah Wazwaz, Jason Moore, Kenneth Yeung, and Brian Kam filed a complaint against Defendant alleging similar CTO claims.[3] *Wazwaz*, Dkt. No. 1. As the cases progressed, the *De Bernardi* action focused on current and former employees of the San Francisco Police Department as well as other City departments, while the *Wazwaz* action focused on current and former members of the San Francisco Deputy Sheriff's Association and Sheriff's Managers and Supervisors Association. *See De Bernardi*, Dkt. No. 36 at 1-2; *Wazwaz*, Dkt. No. 48 at 2.

After the cases were filed, Defendant reportedly admitted to violating the FLSA and brought its pay practices into compliance. *De Bernardi*, Dkt. No. 91-6 Decl. of Gregg McLean Adam ¶ 14; *De Bernardi*, Dkt. No. 91-7 Decl. of David E. Mastagni ¶ 14. Additionally, Defendant pledged to "recalculate the difference between the 'regular rate' of pay and the base

---

[2] As used throughout, "Plaintiffs" refers to the plaintiffs in both the *De Bernardi* and *Wazwaz* cases.

[3] The *Wazwaz* Plaintiffs also alleged that Defendant failed to account for POST certificate pay incentives when calculating regular rates. *Wazwaz*, Dkt. No. 1 at 5-6. Through discovery, Defendant produced documentation that POST Pay had been included in the calculation, and "[a]fter meeting and conferring, the parties confirmed POST Pay had been included in the regular rate used to pay overtime." *Wazwaz*, Dkt. No. 121-7 Decl. of David E. Mastagni ¶ 16. Accordingly, the Settlement Agreement does not provide payment for the *Wazwaz* Plaintiffs' original claims regarding POST certificate incentive payments. *Id.*

2

1  rate for any CTO cashed out and/or used between July 30, 2015 and November 30, 2018 (for the

2  *De Bernardi* Plaintiffs) and September 12, 2015 and November 30, 2018 (for the *Wazwaz*

3  Plaintiffs), and pay the affected Plaintiffs accordingly." Mot. at 2 (citing *De Bernardi*, Dkt. No.

4  91-6 Decl. of Gregg McLean Adam ¶¶ 9-11 and 13-14; *De Bernardi*, Dkt. No. 91-7 Decl. of

5  David E. Mastagni ¶ 14). All told, Defendant paid $1.4 million in "corrective payments to all

6  affected City employees." Mot. at 14.

7  In early 2019, the Court conditionally certified the two FLSA collective actions and

8  ordered the parties to provide notice to affected employees. *See De Bernardi*, Dkt. No. 40;

9  *Wazwaz*, Dkt. No. 65. In November 2019, the Honorable Jacqueline Corley held two settlement

10 conferences, and the parties were able to agree on the principal terms of a settlement agreement.

11 *See De Bernardi*, Dkt. Nos. 73-75; *Wazwaz*, Dkt. Nos. 100-102. The parties filed their motions

12 for preliminary approval in March 2021, *De Bernardi*, Dkt. No. 91, *Wazwaz*, Dkt. No. 121, and

13 the Court granted them in June 2021, *De Bernardi*, Dkt. No. 99, *Wazwaz*, Dkt. No. 127.

### B.   Settlement Agreement

The key terms of the settlement agreement ("SA"), *De Bernardi*, Dkt No. 104-1 Exhibit A, *Wazwaz*, Dkt. No. 133 Exhibit A, are as follows:

### i.   Class Definitions

The Named Plaintiffs are Taira De Bernardi, Stephen Val Kirwan, and Abdullah Wazwaz. SA ¶ 1.c.

The Recovery Plaintiffs are:
> "[T]hose current or former City employees who consented to join either of the Actions and who received Retro Payments, which fully compensated them for unpaid back wages." SA ¶ 1.e.

Retro Payments are:
> "[P]ayments by the City in 2018 to all eligible City employees, including the Named Plaintiffs and Recovery Plaintiffs, to correct underpayment of FLSA overtime and compensatory time." SA ¶ 1.d.

The No Recovery Plaintiffs are:
> "[T]hose current or former City employees who consented to join either of the Actions but who, based on a review of payroll records, are not owed any back wages because they did not use any compensatory time or have compensatory time cashed out during the applicable recovery period, or they did not earn premiums that should have been included in the regular rate of pay for their compensatory

3

time during the applicable recovery period." SA ¶ 1.f.

### ii. Settlement Benefits

Defendant has agreed to pay a settlement amount of $503,506.33, plus additional fees for settlement administration expenses. SA ¶ 2. The individual amount paid to Recovery Plaintiffs with a valid FLSA claim is almost equal to the backpay amounts they already received. *Id.*; *see* Mot. at 4. The amount owed to each Recovery Plaintiff was "calculated using a three-year look-back period from the date each Plaintiff opted in" to the Collective Action.[4] Mot. at 8 n.3. The settlement provides no recovery to "No Recovery Plaintiffs" who "consented to join either of the [a]ctions but who, based on a review of payroll records, are not owed any back wages because they did not use any compensatory time or have compensatory time cashed out during the applicable period, or they did not earn premiums that should have been included in the regular rate of pay for their compensatory time during the applicable recovery period." SA ¶ 1.f.

All told, Plaintiffs represent that $162,723.43 will be paid out to Recovery Plaintiffs.[5] *See* Mot. at 4. The amounts distributed to Recovery Plaintiffs will not be considered or treated as back wages, and no taxes, deductions, or withholdings will be deducted. SA ¶ 2. In the event that it is determined the payments should be taxed, the Named Plaintiffs and Recovery Plaintiffs will be individually liable for such taxes. *Id.*

### iii. Release

The Recovery Plaintiffs will release:
> any and all liabilities, claims, demands, contracts, debts, damages, acts or omissions, obligations and causes of action of every nature, kind and description, in law, equity, or otherwise, whether or not now known or unknown, which heretofore do or may exist, in any way arising out of, connected with or related in any way to the payment of overtime (*Wazwaz*) and/or the cash out or use of compensatory time (*De Bernardi*

---

[4] This time window is slightly different from the time window for the already-paid backpay amounts, which covered three years prior to the filing of each case (i.e. July 30, 2015 through November 30, 2018 for the *De Bernardi* Plaintiffs and September 12, 2015 through November 30, 2018 for the *Wazwaz* Plaintiffs). *See* Mot. at 2.

[5] While the Settlement Agreement originally contemplated paying Recovery Plaintiffs a total of $192,006.33, that amount has now decreased to $162,723.43 because not every Recovery Plaintiff signed a release. *See* Mot. at 4 n.1. Under the Settlement Agreement, only those Recovery Plaintiffs who sign a release can receive settlement funds. *See* SA ¶ 11. The City will pay the third-party administrator the full amount of $192,006.33, but once the settlement payments have all been disbursed, the third party administrator will reimburse the City $29,282.90 for the amount attributable to those Recovery Plaintiffs who did not sign releases. *See* Mot. at 4 n.1.

and *Wazwaz*), as asserted in the Action in which such Named Plaintiff or Recovery Plaintiff is a plaintiff, as well as any attorneys' fees and costs incurred in connection with the negotiation, terms and execution of this Agreement, up to and including the date that, respectively, such Named Plaintiff or Recovery Plaintiff signs this Agreement (the "Signature Date") (hereafter, the "Released Claims"). The release in this Paragraph 3 includes, but is not limited to, release of any matter, cause or thing in any way arising out of, connected with or related to the Action in which the releasing Named Plaintiff or Recovery Plaintiff is a plaintiff, which includes any and all past, pending or contemplated lawsuits; claims; other administrative charges; and grievances brought by or on behalf of such Named Plaintiff or such Recovery Plaintiff against any Releasee in any way arising out of, connected with or relating to the payment of overtime (*Wazwaz*) and/or the cash out or use of compensatory time (*De Bernardi* and *Wazwaz*), as asserted in the Action to which the releasing Named Plaintiff or Recovery Plaintiff is a plaintiff, through the Signature Date.

SA ¶ 3. This release includes a waiver of rights under Section 1542 of the California Civil Code. *Id.*

### iv. Class Notice & Procedure

When conditionally certifying the Collective Actions, the Court approved notice forms, and ordered notice to be sent to all Collective Action members. *De Bernardi*, Dkt. No. 40; *Wazwaz*, Dkt. No. 65. As a part of the preliminary approval process, the Court approved notice forms regarding the proposed settlement, and again ordered notice to be sent to all Collective Action members. *See De Bernardi*, Dkt. Nos. 98, 99, 101; *Wazwaz*, Dkt. Nos. 126, 127, 129.

### v. Incentive Awards

The Settlement Agreement contemplates an incentive award of $1,250 each for the two *De Bernardi* Lead Plaintiffs. SA ¶ 2.

### vi. Attorneys' Fees and Costs

The Settlement Agreement contemplates paying attorneys' fees and costs of $150,000 for *De Bernardi* counsel and $65,000 for *Wazwaz* counsel. *Id.*

## II. DISCUSSION

To determine whether a proposed FLSA settlement warrants approval, courts in this district apply the Eleventh Circuit's standard set out in *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982). *See Slezak v. City of Palo Alto*, No. 16-CV-03224-LHK, 2017 WL 2688224, at

5

*1 n.1 (N.D. Cal. June 22, 2017) (collecting cases). Specifically, the court must consider whether the proposed settlement constitutes "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Food Stores*, 679 F.2d at 1354–55. "If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues . . . that are actually in dispute," the court may approve the settlement "to promote the policy of encouraging settlement of litigation." *Id.* at 1354.

### A. Bona Fide Dispute

The Court previously concluded that this action involves a bona fide dispute under the FLSA. *See De Bernardi*, Dkt. No. 99 at 6-8; *Wazwaz*, Dkt. No. 127 at 6-8. Because no relevant facts have changed, this Order incorporates by reference the prior analysis in the Preliminary Approval Order. *See De Bernardi*, Dkt. No. 99 at 6-8; *Wazwaz*, Dkt. No. 127 at 6-8.

### B. Fair and Reasonable Settlement Agreement

In evaluating a proposed FLSA settlement, a district court must determine whether the proposed settlement constitutes "a fair and reasonable resolution of a bona fide dispute." *Lynn's Food Stores*, 679 F.2d at 1355. To determine whether a resolution is fair and reasonable, courts examine the "totality of the circumstances" and consider the following factors: (1) the plaintiff's range of possible recovery; (2) the stage of proceedings and amount of discovery completed; (3) the seriousness of the litigation risks faced by the parties; (4) the scope of any release provision in the settlement agreement; (5) the experience and views of counsel and the opinion of participating plaintiffs; and (6) the possibility of fraud or collusion. *Estorga v. Santa Clara Valley Trans. Auth.*, No. 16-cv-02668-BLF, 2020 WL 7319356, at *3 (N.D. Cal. Dec. 11, 2020).

#### i. Plaintiffs' Possible Range of Recovery

Under the FLSA, any employer who violates the act "shall be liable to the employee or employees affected in the amount of . . . their unpaid overtime compensation . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216. Plaintiffs have already received all wages owed (i.e. the difference between the regular rate of pay and the base rate of pay) on any CTO cashed out and/or used in the three years preceding the filing of the lawsuits. Mot. at 2. The remaining question is whether Plaintiffs can recover liquidated damages "in an additional equal amount." *See* 29 U.S.C. § 216. "[C]ourts in the Ninth Circuit have found FLSA cases settling for

approximately 25%–35% of the total possible recovery to be reasonable." *Estorga*, 2020 WL 7319356, at *4 (collecting cases). Here, Plaintiffs will receive the maximum possible recovery. Although the Settlement Agreement characterizes it as "interest on . . . back wages," Plaintiffs will receive an amount equal to the backpay they have already received, using a three-year look-back period from the date each Plaintiff opted into the Collective Action. Mot. at 8, SA ¶ 2. The time frame covered by the Settlement Agreement is a bit shorter than the time frame for which Defendant originally issued backpay, but Plaintiffs are effectively receiving full liquidated damages, which would be unavailable if Defendant is found to have acted in good faith. *See* Mot. at 9-11. Moreover, Recovery Plaintiffs are getting a certain and immediate recovery.

Approximately two-thirds of those who opted into the Collective Action will not receive any payment, and Plaintiffs seek to dismiss these individuals without prejudice. *Id.* at 4-5. The parties' review of payroll records showed that No Recovery Plaintiffs do not have a valid FLSA claim for CTO liquidated damages because "they did not (1) earn CTO, or (2) have compensatory time cashed out or used during the applicable recovery period, or (3) earn premiums that should have been included in the regular rate of pay for their compensatory time during the applicable recovery period." *Id.*; *see also De Bernardi*, Dkt. No. 91 at 7, *Wazwaz*, Dkt. No. 121 at 7. As discussed in Section I.A above, Defendant performed an audit of employee payroll records and issued corrective payments prior to reaching a Settlement in this case. *De Bernardi*, Dkt. Nos. 108 ¶¶ 3-5, 109 ¶ 12; Wazwaz, Dkt. Nos. 136 ¶¶ 3-5, 137 ¶ 3. To identify Recovery Plaintiffs, Defendant reviewed the backpay records and determined who received corrective payments for the relevant three-year period. *De Bernardi*, Dkt. Nos. 108 ¶¶ 3-5, 109 ¶ 12; *Wazwaz*, Dkt. Nos. 136 ¶¶ 3-5, 137 ¶ 3. Those who did not qualify for backpay in that timeframe were designated "No Recovery Plaintiffs." *De Bernardi*, Dkt. Nos. 108 ¶¶ 3-5, 109 ¶ 12; *Wazwaz*, Dkt. Nos. 136 ¶¶ 3-5, 137 ¶ 3. Plaintiffs' counsel explains that they relied on Defendant's calculations because, under California Evidence Code § 664, a public entity is presumed to act in accordance with the law. *De Bernardi*, Dkt. No. 109 ¶ 11; *Wazwaz*, Dkt. No. 137 ¶ 2. The Chief Labor Attorney at the San Francisco City Attorney's Office and counsel of record for Defendant, Jonathan Rolnick, also submitted a declaration confirming how No Recovery Plaintiffs were identified. *See De Bernardi*,

Dkt. Nos. 108 ¶¶ 1-5; *Wazwaz*, Dkt. No. 136 ¶¶ 1-5.

Both "Recovery" and "No Recovery" Plaintiffs were informed that they could object to the settlement and the amount of their individual recovery. *De Bernardi*, Dkt. No. 109 ¶ 13; *Wazwaz*, Dkt. No. 110 ¶ 4. *De Bernardi* counsel received two objections. *De Bernardi*, Dkt. No. 109 Exs. 1 and 2 to Suppl. Decl. of Wendi J. Berkowitz. The first objection was by Bernard Chan, who did not provide an explanation for his objection. *De Bernardi*, Dkt. No. 109 Ex. 1 to Suppl. Decl. of Wendi J. Berkowitz; *see also De Bernardi*, Dkt. No. 109 ¶ 5. Defendant's counsel confirmed that Mr. Chan is a No Recovery Plaintiff. *De Bernardi*, Dkt. Nos. 108 ¶ 6(b); *Wazwaz*, Dkt. No. 136 ¶ 6(b).

The second objector, Phillip Brown, objected based on his claim that Defendant owes him at least $30,000 in overtime pay and CTO. *De Bernardi*, Dkt. No. 109 Ex. 2 to Suppl. Decl. of Wendi J. Berkowitz. Plaintiffs' counsel Wendi Berkowitz represents that she spoke with Mr. Brown, Defendant's counsel, and counsel for Mr. Brown's union and performed her own investigation, but was not able to substantiate Mr. Brown's claim. *De Bernardi*, Dkt. No. 109 ¶¶ 6-10. Counsel for Defendant affirms that "[t]he payroll data collected by the Controller indicates that Brown did not take any CTO during [August 2, 2016 to August 2, 2019] and did not receive a payout of accrued CTO during this time. Accordingly, he did not receive any retro-payment covering this period and was not entitled to an interest payment under the settlement agreement." *De Bernardi*, Dkt. Nos. 108 ¶ 6(a); *Wazwaz*, Dkt. No. 136 ¶ 6(a). While he claims that he is owed over $30,000, Mr. Brown has not submitted any evidence or verifiable information to substantiate his claim. In addition, because he is being dismissed without prejudice as a No Recovery Plaintiff, Mr. Brown is free to pursue his own legal remedy if he wishes.

*Wazwaz* counsel received questions from several Plaintiffs. *Wazwaz*, Dkt. No. 137 ¶ 5. *Wazwaz* counsel reports that they provided "additional information and explanations to these individuals" and "communicated with Plaintiffs' labor representatives at the San Francisco Deputy Sheriffs' Association so that the Association could assist in explaining how the determinations in the notices were made." *Id.* No *Wazwaz* Plaintiff filed an objection to the settlement. *Id.* ¶ 6.

The Court finds the settlement to be fair in light of Plaintiffs' possible range of recovery

for three reasons. First, Recovery Plaintiffs are receiving full liquidated damages, or 100% recovery. Second, No Recovery Plaintiffs are not receiving payment because, based on each individual's payroll records, they are not entitled to any backpay. To the extent any No Recovery Plaintiffs object to this determination, they are free to pursue their own claim, as No Recovery Plaintiffs are not giving up any rights as a result of this settlement. Third, the process for identifying what each Plaintiff is owed was fair, reliable, and objective. The Court finds that this factor weighs in favor of approving the settlement.

In light of this analysis, the Court **OVERRULES** the two objections. Mr. Chan's objection was not substantive, and Mr. Brown's allegations are factually unsupported.

### ii. The Stage of Proceedings and the Amount of Discovery Conducted

Courts "assess[] the stage of proceedings and the amount of discovery completed to ensure the parties have an adequate appreciation of the merits of the case before reaching a settlement." *Slezak*, 2017 WL 2688224, at *4 (citation omitted). "If the parties have sufficient information to make an informed decision about settlement, this factor will weigh in favor of approval." *Id.* (internal quotation marks omitted) (quoting *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998)). Plaintiffs have conducted significant discovery in this case, including discovery regarding time and payroll records and the issue of willfulness. Mot. at 11. The Court is satisfied that the parties have an adequate understanding of the merits and sufficient information to make informed decisions. Therefore, the Court finds that this factor weighs in favor of approval.

### iii. The Seriousness of the Litigation Risks Faced by the Parties

"Courts will approve an FLSA settlement when there is a significant risk that litigation could result in a lower recovery for the class or no recovery at all." *Estorga*, 2020 WL 7319356, at *5 (citation omitted). Plaintiffs face two main risks if they proceed with litigation. *See De Bernardi*, Dkt. No. 99 at 6-8; *Wazwaz*, Dkt. No. 127 at 6-8. First, Defendant would preclude any recovery of liquidated damages if it shows that it acted in "good faith" and had "reasonable grounds" to believe that it was not violating the FLSA. *Scalia v. Emp. Sols. Staffing Grp., LLC*, 951 F.3d 1097, 1102 (9th Cir. 2020) (citing 29 U.S.C. §§ 216(b), 260), *cert. denied*, 141 S. Ct. 1376 (2021). Second, even if Plaintiffs could recover liquidated damages, they might be limited

9

1  to recovery for only the past two years. "Ordinarily, a two-year statute of limitations applies to
2  claims under the FLSA." *Scalia*, 951 F.3d at 1102 (citing 29 U.S.C. § 255(a)). However, a three-
3  year statute of limitations applies to a "willful violation." *Id.* "A violation is willful when the
4  employer either knew or showed reckless disregard for . . . whether its conduct was prohibited by
5  the [FLSA.]" *Id.* (internal quotations and citation omitted). The Settlement Agreement awards
6  liquidated damages based on a three-year look-back period, a longer time frame than the default
7  under the FLSA. *See* Mot. at 8 n.3. Given the uncertainty regarding the recoverability of
8  liquidated damages and the proper statute of limitations, the Court finds that this factor weighs in
9  favor of approval.

### iv. The Scope of Any Release Provision in the Settlement Agreement

"Courts in this Circuit have rejected blanket releases of all potential claims against the employer for all unlawful acts whatsoever." *Estorga*, 2020 WL 7319356, at *5 (collecting cases). The release here is limited in time and scope to the kind of FLSA violations alleged in these two actions, as explained in the Preliminary Approval Order. *See De Bernardi*, Dkt. No. 99 at 9-10; *Wazwaz*, Dkt. No. 127 at 9-10. Accordingly, the Court finds that this factor weighs in favor of approval.

### v. The Experience and Views of Counsel

Courts have taken divergent views on the weight to accord counsel's opinions. *See Van Kempen v. Matheson Tri-Gas, Inc.*, No. 15-cv-00060-HSG, 2017 WL 3670787, at *6 (N.D. Cal. Aug. 25, 2017) (citations omitted). Some have accorded counsel's opinion considerable weight, while others have been "reluctant to put much stock in counsel's pronouncements, as parties to class actions and their counsel often have pecuniary interests in seeing the settlement approved." *Id.* (citations omitted). In light of this, the Court affords modest weight to counsel's views.

As explained in the Court's Preliminary Approval Order, Plaintiffs' counsel have many years of experience litigating FLSA claims. *De Bernardi*, Dkt. No. 99 at 10; *Wazwaz*, Dkt. No. 127 at 10. Both counsel "assert that the terms of the Settlement Agreement are fair and reasonable, and that the settlement amount is within the maximum range that Plaintiffs could expect to recover if this case were to proceed to trial." Mot. at 13; *see also De Bernardi*, Dkt. No.

104-2 Decl. of Gregg Adam ⁋ 20; *Wazwaz*, Dkt. No. 133-1 Decl. of David Mastagni ¶ 20. Although this factor's impact is modest, the Court finds that it weighs in favor of approval.

### vi. The Possibility of Fraud or Collusion

In assessing the terms of FLSA settlements, courts may consider the signs of collusion described in *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). *See Estorga*, 2020 WL 7319356, at *6; *Jennings v. Open Door Mktg.*, LLC, No. 15-CV-04080-KAW, 2018 WL 4773057, at *8 (N.D. Cal. Oct. 3, 2018). Fraud or collusion may exist (1) "when counsel receives a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded," (2) "when the parties negotiate a 'clear sailing' agreement providing for the payment of attorney's fees separate and apart from class funds," or (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d at 947 (citations omitted). Additionally, courts consider whether a settlement was reached through "arm's-length negotiations, facilitated by an impartial mediator," which reduces the likelihood of fraud or collusion. *See Slezak*, 2017 WL 2688224, at *5 (collecting cases).

The Court is satisfied that nothing suggests that the Settlement was reached through fraud or collusion. The structure of the Settlement is somewhat unusual because (1) Plaintiffs have already received backpay and (2) liquidated damages, the remaining amounts at issue, are set by statute. *See* 29 U.S.C. § 216(b). As discussed above, No Recovery Plaintiffs were identified through an objective process and set of criteria, *see De Bernardi*, Dkt. No. 109 ⁋ 12, *Wazwaz*, Dkt. No. 137 ⁋ 3, and each Recovery Plaintiff is receiving his/her maximum liquidated damages calculated from payroll records, *see* Mot. at 4. Defendant has agreed to pay the requested attorneys' fees and costs, but the amount ultimately awarded to Plaintiffs' counsel will not affect the amount being paid to Recovery Plaintiffs. *See* SA ⁋ 2. Although the third-party administrator will reimburse Defendant $29,282.90, *see* Mot. at 4 n.1, the Court does not view this as a reversion because Defendant is paying all statutorily defined damages to all Plaintiffs who agree to the Settlement. The money being reimbursed to Defendant is for Recovery Plaintiffs who did not sign a release and therefore declined to settle. *Id.* In essence, this money was never truly part of

11

the Settlement.  For these same reasons, even if the reimbursement could be characterized as a reversion, the Court is not concerned that it suggests fraud or collusion under the unique circumstances here.  Finally, the settlement was reached through arm's-length negotiations facilitated by an impartial magistrate judge.  *See id.* at 13.  The Court finds that this factor weighs in favor of approval.

### C. Attorneys' Fees and Costs

In FLSA actions where plaintiffs prevail, courts "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b).  In the class action context, courts use either the lodestar method or the percentage-of-the-fund method to evaluate requests for attorneys' fees and costs where settlement results in a common fund.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).   Although this is a collective action case, the Court takes guidance from the methodology used in the class action context.  Under the lodestar method, a "lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth*, 654 F.3d at 941 (citing *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003)).  "[T]he established standard when determining a reasonable hourly rate is the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (quotations omitted).

Here, Plaintiffs' counsel seek awards lower than their lodestar amounts.  As of November 29, 2021, *De Bernardi* counsel had spent a total of 679.4 hours on the case.  Mot. at 15.  They have discounted these hours to 450.7 to include only the time of lead counsel Gregg Adam and Wendi Berkowitz.  *Id.*  They have also incurred costs of $3,000.  *Id.  De Bernardi* counsel represent that "[a]pplying rates of $600 per hour to Gregg Adam's time, and $450 per hour to Wendi Berkowitz' time would yield total fees of $216,855." *Id.*  Moreover, if all of the time actually expended by counsel were billed at those rates, instead of the discounted 450.7 hours, the fees would exceed $300,000.  *Id.  De Bernardi* counsel seek an award of $150,000, an amount

lower than the lodestar calculation. *Id.*

As of December 2, 2021, *Wazwaz* counsel had spent a total of 346.97 hours on the case, not including time spent finalizing preliminary approval and final approval motions and attending related hearings. *Id.* at 14. They have also incurred costs of $4,408.10. *Id. Wazwaz* counsel estimate that "[a]pplying hourly rates previously approved in this District to the hours reasonably expended on this matter to date . . . would result in a range of fees from $145,999.50 on the high end to $104,832.50 on the low end."[6] *Id. Wazwaz* counsel request an award of $65,000, an amount lower than the lodestar range.

Having reviewed Plaintiffs' counsel's filings, the Court finds that the hours and rates are reasonable and generally in line with prevailing rates in this District for personnel of comparable experience, skill, and reputation. *See*, *e.g.*, *Aguilar v. Zep Inc.*, No. 13-CV-00563-WHO, 2014 WL 4063144, at *4 (N.D. Cal. Aug. 15, 2014) (collecting cases, and finding prevalent rates ranging from $400 for associates to $750 for partners litigating civil rights and employment cases in this District). Counsel in both cases are requesting total awards well below the lodestar, and the Court finds the requests are reasonable given the work performed and the result achieved.

### D. Incentive Award to *De Bernardi* Lead Plaintiffs

The Settlement Agreement also provides an incentive award for the two *De Bernardi* Lead Plaintiffs of $1,250 each. SA ¶ 2. Plaintiffs' counsel represent that the *De Bernardi* Lead Plaintiffs "provided substantial assistance justifying the incentive awards, including providing CTO and pay documentation to counsel, engaging in strategy discussions, acting as information conduits between the attorneys and other class members, appearing for the full-day settlement conference, and being prepared at all times to testify at deposition and at trial, had either of those

---

[6] *Wazwaz* counsel cite to multiple cases to support the reasonableness of their suggested hourly rates. *See Wazwaz* Dkt. No. 133 Decl. of David Mastagni ¶¶ 30-34; *see Slezak*, 2017 WL 2688224, at *7 (finding that hourly rates of $600 for a partner with 18 years of experience and $400 for an associate were "justifiable based on other cases awarding fees and their declarations as to the market rates in this area"); *Wren v. RGIS Inventory Specialists*, No. C-06-05778-JCS, 2011 WL 1230826, at *19 (N.D. Cal. Apr. 1, 2011) (finding hourly rates of $650 for an attorney with 17 years of experience, $325-450 for associates, and $125-150 for a paralegal reasonable); *Valentine v. Sacramento Metro. Fire Dist.*, No. 2:17-CV-00827-KJM-EFB, 2019 WL 651654, at *7 (E.D. Cal. Feb. 15, 2019) (applying a "lodestar amount for the two primary attorneys on the case, calculated using a range of $540 to $695 for partners and $300 to $490 for associates").

become necessary." Mot. at 15. In light of the time, reputational risk, and effort undertaken by the *De Bernardi* Lead Plaintiffs, as well as the total recovery achieved for Recovery Plaintiffs, the Court finds that the modest incentive awards requested are reasonable.

## III.   CONCLUSION

For the foregoing reasons, it is ordered that:

1. Plaintiffs' Joint Motions for Final Approval of Collective Action Settlement are **GRANTED**.
2. The Court approves the settlement amount of $503,506.33, including settlement administrator costs in the amount of $94,000 for fees incurred to October 31, 2021, attorneys' fees in the amount of $150,000 for *De Bernardi* counsel and $65,000 for *Wazwaz* counsel, and incentive fees for the *De Bernardi* Lead Plaintiffs in the amount of $1,250 each, for a total of $2,500.
3. The Court orders Defendant to pay BrownGreer, within 15 days of BrownGreer's submission to Defendant of its final invoice, an additional sum for fees to be incurred in administering and disbursing settlement proceeds.
4. The Court dismisses without prejudice all No Recovery Plaintiffs and any Recovery Plaintiffs who have not signed releases.
5. The Court dismisses with prejudice all Recovery Plaintiffs who signed releases and have settlement payments made to them.

The parties and settlement administrator are directed to implement this Final Order and the Settlement Agreement in accordance with the terms of the Settlement Agreement. The parties are further directed to file a short stipulated final judgment of two pages or less within 10 days from the date of this Order. The judgment need not, and should not, repeat the analysis in this order.

**IT IS SO ORDERED.**

Dated: 3/4/2022

_Haywood S. Gilliam Jr._
HAYWOOD S. GILLIAM, JR.
United States District Judge